**Leon J. WHITE**

v.

**Warren M. BLOOMBERG, Postmaster United States Post Office Department to be known as the United States Postal Service, et al.**

**Civ. No. 71-200.**

United States District Court,
D. Maryland.

May 4, 1973.

Peter S. Smith, Charles A. Rees, Baltimore, Md., for plaintiff.

George Beall, U. S. Atty., Jeffrey S. White, Asst. U. S. Atty., Baltimore, Md., for defendants.

FRANK A. KAUFMAN, District Judge:

On June 23, 1972, this Court held plaintiff had been wrongfully discharged by the Post Office Department on October 30, 1970 and ordered the Postal Service, as the Department's successor, "without delay [to] reinstate plaintiff and pay to him back pay from the date of his discharge . . . to the date of his reinstatement." White v. Bloomberg, 345 F.Supp. 133, 149 (D.Md.1972). On June 29, 1972, plaintiff was so reinstated. On July 27, 1972, defendants' motion, filed one day earlier, seeking a stay (pending defendants' decision whether or not to appeal) as to payment of back wages but not as to reinstatement, was granted by this Court. On September 28, 1972,

defendants voluntarily dismissed the appeal which they had noted, on August 15, 1972, as to both the reinstatement and back wage portions of this Court's June 23, 1972 determination. Subsequent to September 28, 1972, the parties were unable to agree upon the amount of back pay, the Postal Service urging, in a contention first raised on or about October 6, 1972, that plaintiff had not sufficiently mitigated the damages to him during the period following August 5, 1971, the date of final decision, adverse to plaintiff, by the United States Civil Service Commission, the highest administrative body to which plaintiff could appeal; and, therefore, that back pay should be calculated and paid only for the period running from October 30, 1970 to August 5, 1971. Plaintiff, on the other hand, claimed entitlement to back pay from October 30, 1970 to date of reinstatement, June 29, 1972[1] and interest thereon from and after June 23, 1972.

Defendants treated this Court's separate Order, filed in accordance with Federal Civil Rule 58 on June 23, 1972, which Order reflected the determination set forth in the aforementioned June 23, 1972 opinion, as a final one and noted an appeal therefrom pursuant to 28 U.S.C. § 1291. No request to treat that Order as interlocutory and thus to appeal under 28 U.S.C. § 1292(b) was made by defendants. Accordingly, defendants, who first asserted plaintiff's failure sufficiently to mitigate damages[2] after the date of a final Order herein, may do so only if this Court so permits pursuant to Federal Civil Rule 60 (b). That this Court will not do since the federal Back Pay Act, applicable herein,[3] does not require a wrongfully

---

1. Plaintiff concedes that amounts earned and received by him within the meaning of 5 C.F.R. § 550.804(e) for certain work performed by him during that period should be deducted from the back pay he claims. *See* the discussion *infra* at n. 2 and in the body of this opinion at p. 62.

2. A defendant seemingly has the burden of affirmatively asserting a plaintiff's failure to mitigate damages pursuant to Federal Rule 8(c). *See* 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1273 (1969) and cases cited therein. Thereafter, it may be that under the federal Back Pay Act, a plaintiff must, in proving his damages, bear the burden of proof, presumably by a preponderance of the evidence, with regard to his having mitigated damages. Schwartz v. United States, 181 F.Supp. 408, 411, 149 Ct.Cl. 145 (1960), Whitaker, J. concurring in part and dissenting in part. If that is the rule applicable herein, as to burden of proof, it would appear contrary to "[t]he general authority—and, in fact, the almost universal weight of authority—[which] is that the burden of pleading and proving mitigation of damages is upon the defendant employer. 3 Williston on Contracts, Sec. 1360." Stinson v. Edgemoor Iron Works, 53 F.Supp. 864, 868 (D.Del.1944), cited and quoted from in 5 WRIGHT & MILLER, *supra* § 1273 at n. 84. *See also* RESTATEMENT OF CONTRACTS § 336 (1939); 5 CORBIN ON CONTRACTS § 1039, pp. 242–43; 25 C.J.S. *Damages* § 96, p. 1000 (1966).

Plaintiff admittedly did not seek replacement employment during the period between his discharge and reinstatement. Plaintiff, in an affidavit filed by him with the Postal Service, has stated that in October, 1971 his counsel "told me that he was certain that I would get my job back because the Civil Service Commission Board of Review had just decided a case exactly the opposite of the way it decided my case." The case to which plaintiff refers is *Pierce*, relied upon in the earlier opinion of this Court, White v. Bloomberg, 345 F.Supp. 133, at 145–148 (D.Md.1972). Thus, in addition to pressing diligently for review and reversal of his discharge, plaintiff had reason to assume in October, 1971 that his reinstatement would require his early departure from any permanent position he might have secured during or after October, 1971. This Court does note, however, that White did engage during the period between his discharge and reinstatement in certain part-time employment which, however, he had engaged in to a lesser extent as employment supplementary to his full-time employment prior to his discharge on October 30, 1970. Certain credits against back pay are therefore in order. *See* n. 1 *supra* and the discussion *infra* at p. 62.

3. White v. Bloomberg, 345 F.Supp. 133 at 143 (D.Md.1972).

discharged employee to do more during the period between the date of his unlawful discharge and the date he is granted relief in an administrative *or* court review proceeding than to be both ready to resume his employment *and* diligently to undertake and pursue all available opportunities for administrative and judicial relief. Urbina v. United States, 428 F.2d 1280, 1287, 192 Ct.Cl. 875 (1970); Schwartz v. United States, 181 F.Supp. 408, 410, 411, 149 Ct.Cl. 145 (1960). In the latter cited case, Schwartz, suspended for security reasons from a nonsensitive Post Office position on March 12, 1954, was held not required to seek other employment pending the final administrative action adverse to him on September 15, 1954,[4] but was held required to mitigate damages between that latter date and September 10, 1956, the date of his reinstatement after the Supreme Court had determined in Cole v. Young, 351 U.S. 536, 76 S.Ct. 861, 100 L.Ed. 1396 (1956), that the Security Risk Act, 5 U.S.C.A. § 22–1 *et seq.* (now, in its presently revised form, 5 U.S.C. § 7501 *et seq.*) did not apply to employees in nonsensitive positions. In *Urbina*, plaintiff's reinstatement, like White's herein, did not occur until after a federal court (in *Urbina,* the Court of Claims) overturned earlier final administrative action adverse to the employee. In *Urbina,* more than six years had elapsed between the wrongful discharge of the employee and his reinstatement. In requiring back pay without deduction for alleged failure sufficiently to mitigate damages, the Court of Claims stated 428 F.2d at 1287:

> \* \* \* An illegally discharged employee will not be denied his back salary for failure to work during periods when his time is reasonably consumed in prosecuting appeals from such discharge. \* \* \*

Presumably, that position is subject to the requirement that the record establish that the employee has borne the burden of showing that he would have been willing to work at all times between discharge and reinstatement if he had been reinstated during that period. The record in this case establishes that White was so willing and that at all times he sought to speed along the administrative and court processes in connection with both his refusal to accept the legality of his discharge on October 30, 1970 and his quest for reinstatement. Indeed, it was the Government which in this case insisted, as it had a right to do, on exhaustion of all administrative review. That review, particularly at one level, consumed a considerable period of time, despite White's protest.

5 C.F.R. § 550.804(f) provides:

> In computing the amount of back pay due an employee under this section and section 5596(b) of title 5, United States Code, if the employee has been restored within 1 year after his erroneous separation, the agency may not delete any period from computation on the basis that the employee was under obligation to make an effort to secure other employment during the period covered by the unjustified or unwarranted personnel action.

The Postal Service's Fiscal Handbook, F-33, Part 754.21, provides:

> When a claim for back pay is for a period of more than one year and no outside employment was obtained, claimant is required to furnish a statement giving reasons why such employment was not obtained. If the reasons given are not satisfactory, deny payment for the entire back pay period. Return the employee's claim to the postmaster explaining the claimant must furnish evidence of his effort to secure other employment during all of the back pay period so that damages to the Government will be reduced. In case of doubt, forward the claim file to the Director, Financial Systems Management Division, for a decision.

---

4. In *Schwartz,* the discharged employee did not seek court review after final administrative action adverse to him.

The Postal Manual, Chapter 7, § 755.-763(d) states:

> If the backpay period is more than 1 year and no outside employment was obtained, make a statement giving the reasons why outside employment was not obtained and furnish a resume of the efforts to secure other employment during the backpay period.

The Postal Service contends that those three quoted provisions operate to remove the employee's duty to seek replacement employment only during the pendency of an administrative appeal and not thereafter during any period of time consumed by judicial review proceedings. But the language of the regulation and manuals does not so indicate, and *Urbina* indicates to the opposite.

The Postal Service also contends that an employee is relieved by the regulation and manuals from the necessity of mitigating damages only if the employee is reinstated within a one-year period following his wrongful discharge. The regulation and the manuals do establish different procedures which govern in instances in which discharged employees are reinstated more than one year after their discharge, as opposed to instances in which such employees are reinstated within a year of their discharge. But, even so, that would not seem in any way inconsistent with the *Urbina* conclusion that mitigation does take place when an employee is both ready to work, and diligently undertakes and thereafter continues to press his search for relief in all available forums. Such conduct constitutes mitigation regardless of whether reinstatement takes place during or after one year following discharge, at least in a case such as the case at bar where the employee had a rather subjectively strong, and objectively reasonable, expectation before the end of the year of prevailing as a matter of law in his quest for reinstatement. In effect, what *Urbina* says is that to mitigate' an employee must do what is reasonable. In this case, White did what was reasonable. In that connection, it is relevant to note that *Pierce* was decided on September 14, 1971, approximately one and one-half months before the anniversary of White's discharge. Thus, before that anniversary date, namely, October 30, 1971, was reached, White's legal position vis-a-vis his entitlement to reinstatement and back pay was a strong one. *See* n. 2 *supra*.

■ Accordingly, the Postal Service is hereby ordered to pay to plaintiff an amount equal to all of the pay which would have been paid to him by the Postal Service and its predecessor, had he been employed by the Postal Service and its predecessor during the period from the date of his wrongful discharge, to the date of his reinstatement. The parties have stipulated that the gross amount thereof, before deductions for income tax, life insurance, retirement benefits and repayment of the terminal leave payment made to White in connection with his wrongful discharge, is $19,-278.55, and that the net amount thereof, after such deductions, is $12,185.64. From that latter amount the Postal Service is entitled to deduct the $5151.56 previously paid to White.[5] Further, the parties have stipulated that $518.00 is the net amount earned and received by plaintiff in connection with "employment engaged in by the employee to take the place of the employment from which the employee was separated by the unjustified or unwarranted personnel action." 5 C.F.R. § 550.804(e). *See also Urbina, supra* 428 F.2d at 1288; Floyd v. Resor, 409 F.2d 714 (5th Cir. 1969). Thus, the

---

5. On or about December 14, 1972, without prejudice to the assertion of their respective positions in this case, the Postal Service tendered, and White thereafter accepted, payment of $5151.56. That said payment represented the net amount of wages which would have been paid to White in the period October 30, 1970 to and including August 5, 1972, after admittedly appropriate amounts were withheld from White's gross pay for federal and state income taxes, and deductions were made for White's life insurance premiums, retirement contributions, and repayment of his terminal leave payment.

net amount plaintiff is entitled to receive is $6516.08.

■■ There remains the question of whether plaintiff is entitled to an allowance of interest on the amount of pay due to him. 28 U.S.C. § 1961 provides in relevant part:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. * * * Such interest shall be calculated from the date of the entry of the judgment, at the rate allowed by State law.

The allowance of interest in a federal civil suit is not a matter of discretion, but is mandatory. Indeed, interest would appear to be payable on a judgment regardless of whether or not the judgment order expressly calls for post-judgment interest to be paid. *See* Moore-McCormack Lines, Inc. v. Amirault, 202 F.2d 893, 895 (1st Cir. 1953); Blair v. Durham, 139 F.2d 260, 261 (6th Cir. 1943). 28 U.S.C. § 1961 is by its terms explicitly applicable to "money judgments". Herein, on June 23, 1972, this Court specifically directed payment of back wages from the date of White's discharge to the date of White's reinstatement. The former date was October 30, 1970; the latter, June 29, 1972. The amount of back wages for each and every part of that period up to and including June 23, 1972, and White's rate of pay from and after June 23, 1972, were known on June 23, 1972 and at all times thereafter. So were the facts in connection with the amount earned and received by White from any employment he engaged in between October 30, 1970 and June 23, 1972. Thus, only simple mathematical calculations were required on and after June 23, 1972 to determine the dollar amount of back wages payable by the Postal Service to White. Accordingly, this Court's June 23, 1972 Order constituted a money judgment.

■ The further question arises as to whether a judgment against the Postal Service for back wages is different than a judgment against other defendants. Interest is seemingly not allowable against the United States Government since as the sovereign the Government is immune from the imposition of awards including interest unless the Government consents to such imposition. *See* Reed v. Howbert, 77 F.2d 227, 229 (10th Cir. 1935); United States v. 125.71 Acres of Land, 54 F.Supp. 193, 195 (E. D.Pa.1944). But the Postal Service is an entity sufficiently independent of the Government so that a judgment against it is not one against the sovereign. 345 F.Supp. *supra* at 142 and cases cited thereat. Further, there is nothing in the federal Back Pay Act or any other federal statute which expressly or impliedly excludes the Postal Service or an entity like it from the coverage of 28 U.S.C. § 1961.

It follows that in this case interest at the rate of 6% per annum [6] on White's back wages began to run on June 23, 1972 and will continue to run until payment in full of White's back wages for the full period between the date of White's discharge and his reinstatement.[7]

---

6. That is the rate allowed under Art. III, § 57 of the Constitution of Maryland.

7. White is entitled to receive interest at the rate of 6% per annum on $5151.56 from June 23, 1972 to December 14, 1972 (*see* n. 5 *supra*) and from June 23, 1972 to date of payment of the remaining amount of back pay in accordance with this opinion. The parties agree that that latter amount is $6516.08.