Leon H. WHITE, Appellee,

v.

Warren M. BLOOMBERG, Postmaster, United States Post Office Department to be known as The United States Postal Service, et al., Appellants.

No. 73–1960.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1974.

Decided July 18, 1974.

Jean A. Staudt, Atty., U. S. Dept. of Justice (Irving Jaffe, Acting Asst. Atty. Gen., George Beall, U. S. Atty., Kathryn H. Baldwin, Atty., U. S. Dept. of Justice, on brief), for appellants.

Kenneth A. Reich, Baltimore, Md. (Robert M. Bell, Garber A. Davidson, Jr., David F. Tufaro and Piper & Marbury, Baltimore, Md., on brief) for appellee.

Before WINTER, CRAVEN and WIDENER, Circuit Judges.

CRAVEN, Circuit Judge:

This suit by a wrongfully discharged postal employee raises an ancillary question of procedure under the Back Pay Act of 1966, 5 U.S.C. § 5596. Four months after the district court awarded plaintiff a summary judgment for reinstatement and back pay, the Postal Service attempted to raise an issue of failure to mitigate damages, contending that the period of entitlement to back pay should be reduced because plaintiff had not made reasonable efforts to obtain substitute employment. The district judge refused to reopen the judgment and added post-judgment interest to the amounts due plaintiff. The Postal Service appealed from both rulings. We affirm.

The Baltimore Post Office discharged Leon White on October 30, 1970, for failing to pay a debt claimed by the postal employees' credit union. After exhausting his administrative remedies, White filed this suit for reinstatement and back pay in the district court.[1] On June 23, 1972, the district court granted plaintiff's motion for summary judgment. White v. Bloomberg, 345 F.Supp. 133 (D.Md.1972). The court's opinion was accompanied by an order in these words:

> The defendant United States Postal Service shall without delay reinstate plaintiff and pay to him back pay from the date of his discharge, namely, October 30, 1970, to the date of his reinstatement in accordance with the opinion of this Court filed this 23rd day of June, 1972.

The Postal Service reinstated White six days later, and the parties began discussions over the exact amount he would receive under the Back Pay Act.[2] Some time in October 1972 the Postal Service first informed White's counsel that the back pay award would include only the period from October 30, 1970, the date of discharge, to August 5, 1971, the date of the final administrative action, because White had not actively sought substitute employment after his administrative appeal failed.[3] At plaintiff's re-

1. White filed his initial complaint while he was still engaged in the administrative process, but the district court denied his motions for temporary reinstatement. The present case is based on an amended complaint filed after the last administrative appeal failed.

2. We note at the outset that the Back Pay Act is no longer statutorily applicable to the Postal Service. The Back Pay Act applies to "executive agencies" (as defined in 5 U. S.C. § 105) and other specified organizations. 5 U.S.C. § 5596(a). The Postal Reorganization Act amended 5 U.S.C. § 101, 104 to exclude the Postal Service from the scope of § 105. Pub.L. No. 91-375, § 6(c), 84 Stat. 775. See also 39 U.S.C. § 410(a), (b)(1). The plaintiff in this case was discharged by the old Post Office Department, which was covered by the Back Pay Act, and the Postal Service has assumed its predecessor's back pay obligations to employees discharged after July 1, 1970. 345 F.Supp. 142–143.

3. The Postal Service contends that it could have refused back pay for the entire period under the Postal Service handbook's interpretation of implementing regulations under the Back Pay Act. A Civil Service regulation, 5 C.F.R. § 550.804(f) (1973), provides that an agency should make no deductions for failure to seek substitute employment if the employee is reinstated within a year. The reason for the rule is the idea that a wrongfully discharged employee cannot reasonably be expected to seek other employment immediately but is instead justified in spending his time in administrative protest and attempting to obtain reinstatement. The Postal Service handbook follows this rule but provides that if the employee is reinstated after the year expires, he may be denied back pay for the entire period. Both regulations are reproduced in the opinion below. White v. Bloomberg, 360 F.Supp. 58, 61 (D.Md.1973). In this case, the Postal Service has interpreted § 550.804(f) to exempt not a calendar year but the period of time required for administrative appeal. Although the effect of this interpretation is to give White only a nine-month grace period, defendants insist that this treatment is generous because White could be denied the entire amount. We need not decide in this case whether the Postal Service's rule is valid but we note that it may be inconsistent with the governing Civil Service regulations.

quest the district judge met with counsel and took the problem under advisement. On May 4, 1973, he entered the order from which this appeal was taken. White v. Bloomberg, 360 F.Supp. 58 (D. Md.1973). Judge Kaufman held that his order of June 23, 1972, was a final money judgment that only lacked "simple mathematical calculations," and that the Postal Service's belated attempt to raise the mitigation issue must be regarded as a motion to reopen the judgment under Rule 60(b). He then refused to reopen the judgment, but also considered the merits, expressing the opinion that White had satisfied the Back Pay Act's mitigation requirement by actively pressing his claim for reinstatement. We think he acted rightly but not for the assigned reasons. The district court also ruled on a second dispute that had surfaced after summary judgment was entered, holding that plaintiff was entitled to recover post-judgment interest on his back wages.

### The Mitigation Issue

 The Back Pay Act provides as follows:

(b) An employee of an agency who, on the basis of an administrative determination or a timely appeal, is found by appropriate authority under applicable law or regulation to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the pay, allowances, or differentials of the employee—

(1) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect an amount equal to all or any part of the pay, allowances, or differentials, as applicable, that the employee normally would have earned during that period if the personnel action had not occurred, less any amounts earned

by him through other employment during that period; and

(2) for all purposes, is deemed to have performed service for the agency during that period, except that the employee may not be credited, under this section, leave in an amount that would cause the amount of leave to his credit to exceed the maximum amount of the leave authorized for the employee by law or regulation.

Although the Act itself does not authorize deductions based on an employee's failure to seek substitute employment, the Court of Claims has held that the common law rules of mitigation apply. Urbina v. United States, 192 Ct.Cl. 875, 428 F.2d 1280 (1970); Schwartz v. United States, 149 Ct.Cl. 145, 181 F. Supp. 408 (1960). Under this doctrine, the employer can reduce its back pay obligation by the amount the employee could have earned if he had made reasonable efforts to find another job. 11 S. Williston, Law of Contracts §§ 1358–59 (Jaeger ed. 1968); NLRB v. Moss Planing Mill Co., 224 F.2d 702 (4th Cir. 1955). In this case neither White nor the defendants raised the issue of mitigation prior to the entry of summary judgment, and each now argues that the other bore the burden of proof with respect to this issue. Because defendants did not appeal the initial back pay award, however, they may not now assert plaintiff's failure of proof on this issue as a bar to recovery.[4] And, though mitigation is ordinarily considered an affirmative defense that must be pleaded and proved by the employer, e. g., Florence Printing Co. v. NLRB, 376 F.2d 216 (4th Cir.), cert. denied, 389 U.S. 840, 88 S.Ct. 68, 19 L.Ed.2d 104 (1967); Williston, supra, § 1360; 5 C. Wright & A. Miller, Federal Practice and Procedure § 1273 (1969), we rest our decision on other grounds.

Defendants contend that judicial proceedings for reinstatement and back pay

4. Defendants initially filed a notice of appeal from the summary judgment and asked the district court for a stay of the back pay award pending appeal, but later dismissed the appeal by stipulation.

under the Act must be bifurcated, and that the judgment of June 23 ordering reinstatement and back pay was valid as to the former and void as to the latter. At the very least, they insist that the back pay order may be valid but empty of significant effect because subject to being reduced, or even wiped out, by application of the law of mitigation. They say that following a judicial reinstatement order, the initial computation of back pay must be made by an agency, subject to limited judicial review if the employee is dissatisfied with the administrative award. Taking this view of procedure under the Act, defendants urge us to hold that the judgment requiring the Postal Service to pay back pay to plaintiff did not destroy the right to insist on mitigation and thus to deny back pay for eleven of the twenty months that White was out of work. On such a theory an order allowing back pay means little or nothing: it is simply background against which the parties then begin to litigate the mitigation issue.

Defendants did not present this procedural argument to the district judge prior to the entry of summary judgment. White's complaint clearly raised the issue of back pay. Both parties moved for summary judgment, but neither sought to limit the court's decision to the issue of liability or suggested that there was a genuine issue on damages that would justify a partial summary judgment under Fed.R.Civ.P. 56(c). The defendants' only reference to the issue of back pay was a brief paragraph in the memorandum supporting their motion for summary judgment. It contended that the United States is an indispensable party in an action for back pay and that the district court therefore lacked jurisdiction to award back pay

against the Postal Service. Plaintiff's memorandum responded to this point by suggesting that if the court lacked jurisdiction to award back pay, it could order reinstatement without mentioning back pay or the Back Pay Act. Defendants neither pursued this alternative nor suggested that the court should confine its decree to reinstatement for any other reason. When the district judge entered summary judgment for White and ordered the Postal Service to reinstate him with back pay, the defendants missed another opportunity to salvage the mitigation issue for administrative determination. Instead of filing a motion to have the judgment amended under Rule 59(e), defendants filed a notice of appeal from the entire judgment and asked for a stay of the back pay order pending appeal. Nor did they seek to have the judgment reopened under Rule 60(b) when they discovered that plaintiff's counsel viewed the summary judgment as an actual award of back pay, as indeed, it purports to be. Because the parties had proceeded under different assumptions about the scope of the judicial proceeding, defendants might have been entitled to relief on the grounds of mistake, inadvertence, or excusable neglect under Rule 60(b)(1), but they have never asked for a chance to litigate the mitigation issue in the district court.[5] Indeed, they have not suggested that we should remand the case for this purpose.

██ Despite their failure to ask the district court to reserve the question of failure to mitigate on the amount of back pay and to limit the summary judgment to a theoretical determination of entitlement to back pay, or even to reinstatement only, defendants contend that the judgment must be so limited because the district court lacked power to

5. In a series of letters between Judge Kaufman and counsel for both sides, defendants took the position that the administrative process had already been completed, that no administrative hearing was available to White, and that in reviewing the Postal Service's decision the district court would be

limited to a consideration of whether it was arbitrary, capricious, or an abuse of discretion, or made without observance of required procedure or in excess of statutory authority. Letter from Jean G. Rogers, Assistant U. S. Attorney, to Judge Kaufman, Dec. 4, 1972, Record at 316.

make a specific award under the Back Pay Act. Defendants abandoned their contention that the district court lacked jurisdiction to award back pay by choosing not to appeal the summary judgment, which resolved that issue in plaintiff's favor.[6] Now they base their contentions solely on the language of the Act and the Civil Service Commission's regulations. Paragraph (b)(1) of the Act provides that an employee is entitled to receive back pay "upon correction of the [unjustified] personnel action," and 5 C.F.R. § 550.804(a) provides that "[w]hen an appropriate authority corrects an unjustified or unwarranted personnel action, the agency shall recompute" the amount of back pay due. Around this language defendants have built a procedural structure that echoes the doctrine of primary jurisdiction.[7] First they insist that the issue of back pay cannot be resolved until after an agency or court has decided that the employee was improperly discharged. In this regard back pay claims are no different from other civil suits; a decision on entitlement always precedes calculation of damages, but the two issues may still be resolved in the same proceeding. Defendants also contend that it is impractical to calculate back pay in the main proceeding because back pay continues to accrue until the date of actual reinstatement. This factor is not unique to back pay actions; it may figure in any action that seeks both injunction and damages. Finally, defendants interpret the regulations to require that all claims for back pay be decided initially by an agency. Although it may be argued that paragraph (c) of the Act authorizes the Civil Service Commission to adopt a procedure for exclusive administrative computation of back pay following a judicial order for reinstatement,[8] the present regulations

---

6. Answering defendants' contention that the United States is an indispensable party in an action against the Postal Service for back pay, and resolving a further question of whether White's claim had to be asserted in the Court of Claims because it exceeded $10,000, Judge Kaufman held that the Postal Service is sufficiently independent so that a suit against it does not constitute a suit against the United States. 345 F.Supp. at 142–143. We agree that a suit may be maintained against the Postal Service without joining the United States as a party, and that the district courts have jurisdiction over suits against the Postal Service for amounts over $10,000. The Postal Reorganization Act gave jurisdiction to the district courts in "all actions brought by or against the Postal Service," 39 U.S.C. § 409(a), and authorized the Postal Service "to sue and be sued in its official name." Id. § 401(1). Moreover, in listing the provisions of Title 28 that apply to the Postal Service, 39 U.S.C. § 409 does not include sections 1491–1506, which give the Court of Claims jurisdiction over suits against the United States. Consequently, while employees of most federal agencies must resort to the Court of Claims to recover back pay in amounts of over $10,000, see 28 U.S.C. § 1346(a)(2); S.Rep.No.1390, 88th Cong., 2d Sess. (1964) (reporting Pub.L.No. 88–519, 78 Stat. 699, which amended 28 U.S.C. § 1346(d)), the district courts have jurisdiction over all back pay claims of Postal Service employees under 39 U.S.C. § 409(a).

7. The Supreme Court has defined the doctrine of primary jurisdiction as follows:

The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. . . . "Primary jurisdiction" . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

United States v. Western Pac. R.R., 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). See also 3 K. Davis, Administrative Law Treatise §§ 19.01–.09 (1958, Supp. 1970). Defendants have not explicitly invoked the doctrine of primary jurisdiction in this case. Instead of urging us to employ this doctrine to require resort to administrative agencies in computing back pay, defendants have simply argued that the existing regulations mandate such a procedure.

8. (c) The Civil Service Commission shall prescribe regulations to carry out this section. However, the regulations are not applicable to the Tennessee Valley Authority and its employees.

5 U.S.C. § 5596(c).

have not done so.[9] Neither the Act nor the regulations prescribe the procedure to be followed by the district courts.

Because the Act and the regulations are silent on this point, we decline to impose a bifurcated procedure on the district courts. The district judges are better situated than we to choose the optimum procedure for a given case. In many cases the court may be able to compute back pay at the time it orders reinstatement. If a particular case presents a complex dispute over computation, the district court has discretionary power to bifurcate the proceedings under Rule 42(b) or Rule 56(c). Indeed, the district court might have done so here had it been asked. Or the district judge may prefer to have the employee and the agency seek agreement on the computation of back pay. If so, he may follow a procedure that has been employed in other Back Pay Act cases, ordering reinstatement and retaining jurisdiction over the back pay issue in case the parties cannot reach an administrative settlement. *See* Floyd v. Resor, 409 F.2d 714 (5th Cir. 1969); Massman v. Secretary of HUD, 332 F. Supp. 894 (D.D.C.1971).[10] We hold that the district courts are free to tailor an appropriate procedure to fit the facts and the pleadings and to select what seems best for a given case. We decline to adopt a mandatory bifurcation rule, and especially so where bifurcation is suggested for the first time four months after final judgment.

### Post-Judgment Interest

The Postal Service contends that as a government agency it is immune from an award of post-judgment interest. It is well established that under the doctrine of sovereign immunity, the government may not be required to pay interest on its debts without consent. *E. g.*, United States v. Alcea Band of Tillamooks, 341 U.S. 48, 71 S.Ct. 552, 95 L.Ed. 738 (1951). But it is equally well established that Congress waives sovereign immunity when it authorizes a governmental agency to sue and be sued in its own name. RFC v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L. Ed. 595 (1941); FHA v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940).[11] Under the terms of 39 U.S.C. § 401(1), the Postal Service has the power "to sue and be sued in its official name." The issue we must decide is whether this waiver of immunity subjects the Postal Service to interest on its judgment debts.

In RFC v. J. G. Menihan Corp., *supra*, the Supreme Court wrote that

---

9. The regulations implementing the Back Pay Act appear at 5 C.F.R. §§ 550.801–.804 (1973). The language most favorable to defendants' procedural arguments is in § 550.-804(a):

 When an appropriate authority [defined in § 550.803(c) as either an agency or a court] corrects an unjustified or unwarranted personnel action, *the agency shall recompute* for the period covered by the corrective action the pay, allowances, differentials, and leave account . . . of the employee as if the unjustified or unwarranted personnel action had not occurred . . . .

 5 C.F.R. § 550.804(a) [emphasis added]. Certainly the regulation contemplates that back pay will ordinarily be computed by an agency, and indeed, that may be the usual practice. But the focus of the regulation is on the substance of the computation rather than the procedure to be followed. The remainder of § 550.804 specifies what pay allowances are to be included in the back pay award. It contains no mention of the provisions one would expect in a procedural regulation, *e. g.*, the time period permitted for computation, who shall make the decision, whether a hearing shall be allowed or written evidence received. We think the Civil Service Commission in promulgating this regulation had no thought of ousting the district courts of jurisdiction to award back pay in reinstatement cases. We need not consider whether it has the power to do so.

10. The Court of Claims employs a similar procedure under its rule 131(c). *See* Urbina v. United States, 192 Ct.Cl. 875, 428 F. 2d 1280 (1970); Motto v. United States, 172 Ct.Cl. 162, 360 F.2d 643 (1966).

11. *See also* Federal Land Bank v. Priddy, 295 U.S. 229, 55 S.Ct. 705, 79 L.Ed. 1408 (1935).

"the words 'sue and be sued' normally include the natural and appropriate incidents of legal proceedings." 312 U.S. at 85, 61 S.Ct. at 487. Relying on such a grant of authority, it held that the Reconstruction Finance Corporation could be ordered to pay its adversary's costs in trademark litigation. In FHA v. Burr, *supra*, the Court held that limits on the authority to sue and be sued should not be presumed. Because post-judgment interest is a normal incident of suits for damages, 28 U.S.C. § 1961, the principle of these cases suggests that a "sue and be sued" clause ordinarily should be construed to waive the agency's immunity from interest awards. *See* Asheville Mica Co. v. Commodity Credit Corp., 239 F.Supp. 383, 392–394 (S.D.N.Y.1965), aff'd, 360 F.2d 931 (2d Cir. 1966). The Postal Service contends, however, that *Menihan* and *Burr* apply only to governmental corporations, and that because the Postal Service is unincorporated the "sue and be sued" clause cannot be given the same effect. We disagree. A grant of authority to sue and be sued constitutes at least a partial waiver of immunity regardless of the structure or functions of the agency. The question in any such case is the scope of that waiver. In FHA v. Burr the Court outlined the following principles for discerning congressional intent:

> [I]f the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress

to use the "sue and be sued" clause in a narrow sense.

309 U.S. at 245, 60 S.Ct. at 490 (footnote omitted).

■ The Postal Reorganization Act contains no indication that the "sue and be sued" provision should not be read to authorize an award of interest against the Postal Service. The waiver of immunity is restricted by 39 U.S.C. § 409(b), which gives the Postal Service the benefit of certain procedures that are applicable to suits against the United States and its officers,[12] and section 409(c), which makes the Federal Tort Claims Act applicable to the Postal Service. The Act contains no other limits on the Postal Service's amenability to suit. Nor under the guidelines of FHA v. Burr is there any suggestion that vulnerability to post-judgment interest will interfere with the Postal Service's mission. We therefore presume that in creating the Postal Service, Congress used the phrase "sue and be sued" in its normal sense, subjecting the Postal Service to post-judgment interest.

Affirmed.

WIDENER, Circuit Judge (concurring and dissenting):

I concur with the majority in allowing interest to be recovered against the Postal Service under the "sue and be sued" provisions of 29 U.S.C. § 401(1), although I would add the caveat that the Postal Service is not a governmental corporation (as it was treated by the district court) in the sense that the Reconstruction Finance Corporation is, but is rather an "independent establishment of the executive branch" performing a function which only the federal government may perform or delegate. 39 U.S. C. § 201; Lawhorn v. Lawhorn, 351 F. Supp. 1399, 1400 (S.D.W.Va.1972). I

---

12. Specifically, these are "the provisions of title 28 relating to service of process, venue, and limitations of time for bringing action in suits in which the United States, its officers, or employees are parties, and the rules of procedure adopted under title 28 for suits in which the United States, its officers, or employees are parties . . . ." 39 U.S.C. § 409(b). Presumably this latter clause refers to chapter 161 of title 28, sections 2401 through 2416.

also note that, construing the phrase "sue and be sued," this court has previously decided a very nearly identical case, allowing interest on a judgment against the Federal Housing Administrator on the ground that the United States, as an insurer, had agreed to be sued, and recovery of interest is an ordinary incident of suit on an insurance contract. Ferguson v. Union Nat'l. Bank of Clarksburg, 126 F.2d 753, 759 (4th Cir. 1942). The Federal Housing Administrator, in *Ferguson,* obviously was a part of the executive branch of the government as is the Postal Service here, neither being a governmental corporation. Cf. 39 U.S.C. § 201; 48 Stat. Part I, p. 1246. The Secretary of Housing and Urban Development has since been substituted. See 12 U.S.C.A. § 1702 and notes.

As to the mitigation issue, I must respectfully dissent.

The district court, I believe, was not factually correct in its assertion that the judgment was not, and would not be, reopened. Thus, the majority, relying on the statement by the district court that it refused to reopen the judgment, has reached the incorrect conclusion that the Postal Service has failed to properly raise the mitigation issue. The record on appeal contains an order of the district court dated November 2, 1972, which I would construe as reopening the case to specifically consider the amount of back pay due plaintiff under the order of June 23, 1972.[1] It is, then, apparent that the mitigation issue was raised, and the issue was not only raised, it was argued continually by correspondence from both parties to the court until the May 4, 1973 opinion and order were filed. I also note that the district court, although noting it would not reopen the judgment under F.R.C.P. 60(b), despite having already done so, nevertheless proceeded to decide the mitigation issue on the merits, and concluded that the plaintiff had met his burden of mitigation by "doing what is reasonable" in seeking administrative and judicial review of his discharge. Although I am of opinion this holding on the merits as to mitigation is not in accordance with the statutes, regulations, and case law on the subject, especially in its reliance on *Schwartz* and *Urbina,* in both of which cases the employee was either actually at work or seeking work by way of mitigation, this is not my principal complaint.

Whether the judgment was reopened or not, I think the district court erred in holding, contrary to the statutes and regulations, that the Postal Service was precluded from raising any issue relating to the amount of the award after the order of June 23rd became final. The district court, in the order of June 23rd, as it properly should not have, did not compute the amount, so the Postal Service then did just as the statutes and regulations require and began the computation. Indeed, had the district court, in its order of June 23rd, computed the amount, as it did later, absent prior administrative determination, its authority so to do was precluded by the statute

---

1. The full text of the order:

"MR. CLERK:

In view of certain matters that have been raised in this case with regard to the amount of back pay which the plaintiff is entitled to receive under the Order of this Court, the official court file in this case should be reopened.

It is so ORDERED, this 2nd day of November, 1972."

While the order in certain circumstances might be viewed merely as a direction to the clerk for administrative or statistical purposes, parts of two subsequent letters from the court to the attorneys make its meaning clear, or at least make clear that the matter of mitigation was before the court for consideration on its merits.

*Letter of November 14, 1972*

"Tentatively, it would appear to me . . . that the government does have a right to raise the issue of mitigation for the period beginning October 31, 1971 and ending June 29, 1972."

*Letter of December 7, 1972*

"(2) I believe that an evidentiary hearing, either at the administrative or judicial level, will be required to determine the issue of mitigation."

and regulations prescribed by specific authority of the statute.

This case is controlled by the Back Pay Act, 5 U.S.C. § 5596. Section 5596(b) provides that "An employee of an agency who . . . is found by appropriate authority . . . to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the pay," etc., "(1) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect an amount equal to all or any part of the pay" to which he would have been entitled, less any amounts earned by him through other employment during the period. Section 5596(c) provides, in pertinent part: "The Civil Service Commission shall prescribe regulations to carry out this section."

Pursuant to § 5596(c), the Civil Service Commission has prescribed such regulations which are found in 5 CFR §§ 550.801, .802, .803 and .804. The regulations provide, in § 550.803(c)(2), that an "appropriate authority" is "a court having jurisdiction to make a determination that a personnel action is unjustified or unwarranted." The court, in this case, of course, was the district court from which this appeal was taken, which made the determination that the personnel action complained of by the plaintiff was unjustified or unwarranted.

The regulations then continue, § 550.804(a), "[w]hen an appropriate authority corrects an unjustified or unwarranted personnel action, *the agency shall recompute* for the period covered by the corrective action the pay . . . ." [Italics added] The Back Pay Act, then, and the regulations specifically promulgated thereunder provide: First, the corrective action going to the merits of the personnel action; and, second, an administrative computation of back pay.

I am of opinion the statute and regulations are clear, that they allow no variation from the set procedure prescribed, and that the district court had no authority to compute the back pay to the plaintiff absent prior administrative determination, or at least an opportunity to the Postal Service to make an administrative determination.

For a case reciting the proper method to be used in the ascertainment of back pay, see Floyd v. Resor, 409 F.2d 714 (5th Cir. 1969), in which case, after ordering the reinstatement of the employee, the district court retained jurisdiction of the matter of the back pay but deferred its judgment on the merits of the question of the amount of back pay until the amount had been computed by administrative action.

The holding of the majority in this case, that a district court may proceed directly to the merits of the amount of the back pay absent a prior administrative determination, or opportunity therefor, not only is contrary to the plain words of the statute and the specifically authorized regulations, but may only go to further clutter up and needlessly encumber the dockets of already overloaded district courts. Even aside from the statute and regulation requirements, absent some compelling reason not shown by this record, I am unable to grasp the logic of allowing a resort to the district court when a previous administrative determination is available. Like the majority in its dictum concerning primary jurisdiction, I do not reach the question of whether or not exhaustion of administrative remedies may be required. See Myers v. Bethlehem Corp., 303 U.S. 41, esp. 50–53, 58 S.Ct. 459, 82 L.Ed. 638 (1938).