**Blanche MILNER, Plaintiff,**

v.

**William F. BOLGER, Postmaster General, Defendant.**

**No. Civ. S–81–315 RAR.**

United States District Court, E. D. California.

Aug. 26, 1982.

Rolleen McIlwrath, Fass, McIlwrath & Yecies, Stockton, Cal., for plaintiff.

Larry B. Anderson, U.S. Postal Service, San Bruno, Cal., Yoshinori H.T. Himel, Asst. U.S. Atty., Sacramento, Cal., for defendant.

## MEMORANDUM AND ORDER

RAMIREZ, District Judge.

The motion of defendant to strike plaintiff's prayer for interest on any judgment she may hereinafter recover came on regularly for hearing before the Honorable Raul A. Ramirez on May 10, 1982. Defendant and moving party, WILLIAM F. BOLGER, was represented by Yoshinori H.T. Himel, Assistant United States Attorney, and Larry B. Anderson, Esq., of the United States Postal Service. Plaintiff and responding party, BLANCHE MILNER, was represented by Rolleen McIlwrath, Esq. Having considered the memoranda of points and authorities and having considered the respective arguments of counsel, the Court herein renders the following memorandum decision:

## BACKGROUND

Plaintiff commenced this action on May 28, 1981, alleging, *inter alia*, that defendant had discriminated against her on the basis of her gender and her physical handicap in the terms and conditions of her employment as a United States Postal Service employee, in violation of 42 U.S.C. § 2000e–16. In an amended complaint, filed October 21, 1981, plaintiff requested an order requiring defendant to make her whole "by appropriate back pay and otherwise." Specifically, plaintiff prayed, "The amount paid in restitution should include interest, and an upward adjustment to compensate for the loss of real purchasing power due to inflation between the dates of loss and of award." It is this portion of the prayer that the motion to dismiss addresses.

As a general rule neither pre-judgment nor post-judgment interest is recoverable from the United States, *United States*

*v. Alcea Band of Tillamooks,* 341 U.S. 48, 71 S.Ct. 552, 95 L.Ed. 738 (1951). This general rule has been applied in Title VII actions brought against the military departments as well as the executive agencies of the United States, *Saunders v. Claytor,* 629 F.2d 596 (9th Cir. 1980) (Department of the Navy), *Blake v. Califano,* 626 F.2d 891 (D.C. Cir. 1980) (Department of Health and Human Services), *deWeever v. United States,* 618 F.2d 685 (10th Cir. 1980) (Veterans' Administration),[1] *Fischer v. Adams,* 572 F.2d 406 (1st Cir. 1978) (Department of Transportation), *Richerson v. Jones,* 551 F.2d 918 (3rd Cir. 1977) (Department of the Navy). The question presented by this case is whether the United States Postal Service may claim the benefit of the general rule in a Title VII action in which it is the named defendant.

## I

■ The primary obstacle to the invocation of sovereign immunity by the Postal Service is the "sue and be sued" clause of 39 U.S.C. § 401(1):

> The Postal Service shall have the following general powers:
>
> (1) to sue and be sued in its official name;
>
> . . . .

It has long been established that the inclusion of a "sue and be sued" clause in the Congressional enabling legislation constitutes a waiver of sovereign immunity, *Reconstruction Finance Corp. v. J.G. Menihan Corp.,* 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941), *Federal Housing Administration v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), *Standard Oil Co. v. United States,* 267 U.S. 76, 45 S.Ct. 211, 69 L.Ed. 519 (1925), see *Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939). In *Burr,* the Supreme Court held:

[W]e start from the premise that such waivers by Congress of governmental immunity in case of such federal instrumentalities should be liberally construed. This policy is in line with the current disfavor of the doctrine of governmental immunity from suit, as evidenced by the increasing tendency of Congress to waive the immunity where federal governmental corporations are concerned. *Keifer & Keifer v. Reconstruction Finance Corporation, supra.* Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued", it cannot be lightly assumed that restrictions on that authority are to be applied. Rather if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. *In the absence of such a showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue and be sued", that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.* (Emphasis added)

309 U.S. at 245, 60 S.Ct. at 490. It is therefore incumbent upon this Court to determine (1) if the award of interest on Title VII judgments would be inconsistent with the statutory scheme for the operation of the Postal Service, (2) would gravely impair the performance of a governmental function, (3) would do violence to a plain Congressional intent to limit the waiver to a narrow set of circumstances.

---

1. The Veterans' Administration is not an executive department of the United States, *see* 5 U.S.C. § 101. Rather, it is an independent establishment, 38 U.S.C. § 201, 5 U.S.C. § 104. The Veterans' Administration, unlike the Postal Service, is an "executive agency," 5 U.S.C. § 105. Congress has not authorized the Veterans' Administration to sue and be sued, 38 U.S.C. § 211.

The statutory scheme for the operation of the Postal Service is codified in Title 39 of the United States Code. In enacting the Postal Reorganization Act of 1970, Pub. L. No. 91–375, 84 Stat. 719 (1970), Congress espoused a thoughtful revision of the Postal Service, see generally, H.R. Rep. No. 91–1104, 91st Cong., 2d Sess., reprinted in 1970 U.S. Code, Cong. & Admin. News 3649. On the one hand, Congress clearly wanted the Postal Service to operate in a sound, businesslike manner. On the other hand, Congress wanted the Postal Service to operate as a public service. In order to harmonize both of these sometimes competing goals, Congress attempted to create a business entity, but imposed some limitations on business operations to accommodate public service needs.

In order to facilitate the sound, businesslike operations mandated by Congress, the Postal Service was given a considerable degree of independence:[2] for instance, the Postmaster General was removed from the President's cabinet and his appointment and supervision were vested in a Board of Governors, 39 U.S.C. §§ 202(c), 203; in addition, the appointment of the Board of Governors, as well as the restrictions upon and requirements for the appointment of the Governors, was amended so as to insulate the Governors, and the Postmaster General, from the temptation to manage the Postal Service in a manner which would serve various particular political interests, see, H.R. Rep. No. 91–1104, 91st Cong., 2d Sess., reprinted in 1970 U.S. Code, Cong. & Admin. News 3649, 3660.

In the field of labor-management relations, Congress patterned the Postal Service very closely after private enterprise. With the enactment of the Postal Reorganization Act of 1970, Congress gave to Postal Service employees the statutory right to organize themselves into bargaining units and to bargain with management regarding wages, hours, and working conditions.[3] The supervision of the organizing process was assigned, not to the Federal Labor Relations Authority, 5 U.S.C. § 7101, et seq., but to the National Labor Relations Board, 39 U.S.C. § 1202, et seq. The similarity of the labor-management relationship in the Postal Service to the labor-management relationships of private industry was quite deliberate:

> Generally speaking, H.R. 17070 would bring postal labor relations within the same structure that exists for nationwide enterprises in the private sector. Rank and file postal employees would, for the first time, have a statutory right to or-

2. Section 201 of Title 39 describes the Postal Service as an "independent establishment":

There is established, as an independent establishment of the executive branch of the Government of the United States, the United States Postal Service.

What "independent establishment" means in this context is somewhat difficult to determine, since "independent establishment" is elsewhere defined as

[A]n establishment in the executive branch (other than the United States Postal Service or the Postal Rate Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment.... (Emphasis supplied)

5 U.S.C. § 104(1). The exclusion of the United States Postal Service from the definition of "independent establishment" in 5 U.S.C. § 104(1) was effectuated by the Postal Reorganization Act of 1970. Since it was the Postal Reorganization Act of 1970 that enacted 39 U.S.C. § 201, these statutes are clearly in pari materia. It is fair to infer, therefore, that Congress intended the Postal Service to have great-

er independence than that of other independent establishments.

3. Prior to the enactment of the Postal Reorganization Act of 1970, the right of federal employees to organize themselves into bargaining units did not have a statutory basis; the right to organize depended upon Executive Order 10988, 27 Fed.Reg. 551 (1962), superseded by Executive Order 11491, 34 Fed.Reg. 17605 (1969), reprinted in 5 U.S.C. § 7101 (1980), Old Dominion Branch No. 496, National Association of Letter Carriers v. Austin, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed. 745 (1974). It was not until 1978, with the enactment of the Civil Service Reform Act of 1978, Pub. L. No. 95–454, 92 Stat. 1192 (codified in Title 5, U.S.C.) that the employees of the executive agencies were granted a statutory right to organize. Even now, the employees of the Postal Service have the right to bargain with management with respect to wages, a right denied the employees of executive agencies, 5 U.S.C. § 7103(a)(14)(C).

ganize collectively and to bargain collectively with management on all those matters—including wages and hours—which their neighbors in private industry have long been able to bargain for.

H.R. Rep. No. 91–1104, 91st Cong., 2d Sess., *reprinted in* 1970 *U.S. Code, Cong. & Admin. News* at 3662.

In its fiscal affairs, the Postal Service appears to enjoy a greater degree of autonomy than that enjoyed by the executive agencies. The capital of the Postal Service is treated as something quite distinct from the capital of the United States, 39 U.S.C. § 2002. The day-to-day financial operations are funded by the Postal Service Fund, over which the Postal Service has exclusive control, 39 U.S.C. § 2003. The Postal Service has the right to sell its own obligations without the prior consent of the United States Treasury, 39 U.S.C. §§ 2005, 2006. Finally, the Postal Service has been granted the authority to procure the property and services it needs to conduct its operations independently of the executive agencies, 39 U.S.C. § 410(a), 39 C.F.R., Part 601.

In sum, both the text of the statute and the legislative history make plain the Congressional intent to fashion an entity that would function as much like a private business as possible. At the same time, the text of the statute and the legislative history make plain a keen Congressional awareness of the extent to which the Postal Service had to be cognizant of and governed by its public service mission:

The United States Postal Service shall be operated as a basic and fundamental service provided to the people by the Government of the United States, authorized by the Constitution, created by Act of Congress, and supported by the people. The Postal Service shall have as its basic function the obligation to provide postal services to bind the Nation together

through the personal, educational, literary, and business correspondence of the people. It shall provide prompt, reliable, and efficient services to patrons in all areas and shall render postal services to all communities. The costs of establishing and maintaining the Postal Service shall not be apportioned to impair the overall value of such service to the people.

39 U.S.C. § 101(a). Two obvious ways in which Congress moderated the ability of the Postal Service to operate as a private business are the prohibition on the closing of deficit-ridden rural post offices, 39 U.S.C. § 101(b), and the prohibition on strikes by employees, 39 U.S.C. § 410(b)(1), 5 U.S.C. § 7311(3), H.R. Rep. No. 91–1104, 91st Cong., 2d Sess., *reprinted in* 1970 *U.S. Code, Cong. & Admin. News* at 3662. Thus, although Congress consciously chose to structure the Postal Service as a business enterprise and believed that the business model would best serve the public interest, Congress also recognized that the public service *raison d'etre* imposed limitations on business operations. Where Congress perceived a conflict, Congress required the business aspect of operations to give way.

For the reasons as set forth herein, this Court is of the opinion that an award of interest on judgments would not be inconsistent with the statutory scheme because it would not impair the public service function of the Postal Service.[4] On the contrary, liability for interest on judgments is an "ordinary incident of suit," which is a predictable, if not ordinary, incident of doing business, *Standard Oil Co. v. United States*, 267 U.S. 76, 45 S.Ct. 211, 69 L.Ed. 519 (1925), *North New York Savings Bank v. Federal Savings & Loan Insurance Corp.*, 515 F.2d 1355 (D.C. Cir. 1975), *Bituminous Casualty Corp. v. Lynn*, 503 F.2d 636 (6th Cir. 1974), *New York Guardian Mortgagee Corp. v. Cleland*, 473 F.Supp. 422 (S.D.N.Y.

4. The Court does not regard the mere obligation to pay money as impairing the ability of the Postal Service to perform its mission. In this context, the Court notes that Congress has determined that it is appropriate for the Postal Service, as well as the executive agencies, to pay interest on judgments on contract claims, 41 U.S.C. § 611. Presumably Congress has concluded that the payment of interest, *per se*, does not impair the performance of *any* executive function.

1979). The award of interest on judgments will in no way impair the ability of the Postal Service to "bind the Nation together through the personal, educational, literary, and business correspondence of the people." To put it yet another way, an entity undeterred by snow, sleet, or dark of night will hardly be deterred by liability for interest on judgments.

Thus this Court concludes that an award of interest on any judgment hereinafter recovered would neither be inconsistent with the statutory scheme for the operation of the Postal Service, nor would it gravely impair the performance of the Postal Service's function. Furthermore, the Court cannot discern in either the text of the statute or the legislative history a plain Congressional intent to use the phrase "sue and be sued" in a narrow sense, and no such intent has been suggested to the Court by the Postal Service. Accordingly, the Court is required to conclude that the use, by Congress, of the phrase "sue and be sued" constituted a broad waiver of sovereign immunity.

▇ In reaching this conclusion the Court has considered the cases of *White v. Bloomberg*, 501 F.2d 1379 (4th Cir. 1974), *Chisholm v. United States*, 516 F.Supp. 810, 880 (W.D.N.C.) *aff'd on other grounds*, 665 F.2d 482 (4th Cir. 1981), and *Coley Properties Corp. v. United States*, 593 F.2d 380 (Ct. Cl. 1980).[5]

In *White v. Bloomberg*, 501 F.2d 1379 (4th Cir. 1974), the Fourth Circuit discussed the liability of the Postal Service for interest on a judgment under the Back Pay Act,

5 U.S.C. § 5596. Essentially, the Fourth Circuit engaged in the very same analysis this Court has engaged in, *supra*. The Fourth Circuit examined the standard for construing a "sue and be sued" clause established by *Federal Housing Administration v. Burr, supra,* and applied that standard to the Postal Service, concluding, as this Court has concluded, that 39 U.S.C. § 401(1) was a broad waiver of sovereign immunity. Thus, the Fourth Circuit found that the Postal Service was liable for postjudgment interest.

At bar, the Postal Service argues that *White* was wrongly decided, that *Coley Properties Corp. v. United States,* 593 F.2d 380 (Ct. Cl. 1980) is a better-reasoned case, and that this Court should apply the rationale of *Coley Properties.*

In *Coley Properties,* a contractor who sustained delay damages as a result of changes ordered by the Postal Service sought an award of interest on those damages. In rejecting plaintiff's claim, the Court of Claims found that the Postal Service was the United States for the purposes of Court of Claims jurisdiction, and thus the United States for the purpose of 28 U.S.C. § 2516(a), which is a codification of the traditional rule of sovereign immunity. Since the Court of Claims was satisfied that the Postal Service was the United States for such purposes, it concluded that no interest was awardable and that the Postal Reorganization Act did not expressly provide for an award of interest. In *Coley Properties* the Court of Claims relied pri-

---

5. The Court has also considered the garnishment cases. *Compare, Associates Financial Services of America, Inc. v. Robinson*, 582 F.2d 1 (5th Cir. 1978), *Beneficial Finance Co. v. Dallas*, 571 F.2d 125 (2nd Cir. 1978), *General Electric Credit Corp. v. Smith*, 565 F.2d 291 (4th Cir. 1977), *Goodman's Furniture Co. v. United States Postal Service*, 561 F.2d 462 (3rd Cir. 1977), *May Department Stores Co. v. Williamson*, 549 F.2d 1147 (8th Cir. 1977), *Standard Oil Division, American Oil Co. v. Starks*, 528 F.2d 201 (7th Cir. 1976), *Lincoln National Bank v. Marotta*, 442 F.2d 49 (N.D.N.Y.1977), *Bank of Virginia v. Tompkins*, 434 F.Supp. 787 (E.D. Va. 1977), *Iowa-Des Moines National Bank v. United States*, 414 F.Supp. 1393 (S.D.

Iowa 1976), *Colonial Bank v. Broussard*, 403 F.Supp. 686 (E.D. La. 1975), *with, Kann Corp. v. Monroe*, 425 F.Supp. 169 (D.D.C. 1977), *Drs. Macht, Podore & Associates, Inc. v. Girton*, 392 F.Supp. 66 (S.D. Ohio 1975), *Nolan v. Woodruff*, 68 F.R.D. 660 (D.D.C. 1975), *Lawhorn v. Lawhorn*, 351 F.Supp. 1399 (S.D. W. Va. 1972), and *Detroit Window Cleaners Local 139 Insurance Fund v. Griffin*, 345 F.Supp. 1343 (E.D. Mich. 1972). A comparison of the cited cases requires the conclusion that the great weight of authority finds that the "sue and be sued" clause constitutes a waiver of sovereign immunity for purposes of garnishment of employees' wages.

marily upon its earlier decision in *Butz Engineering Corp. v. United States*, 204 Ct.Cl. 561, 499 F.2d 619 (1974).

In *Butz Engineering*, the Court undertook a careful examination of the statute and the legislative history of the Postal Reorganization Act and concluded that Congress had not sufficiently invested the Postal Service with independence to warrant a distinction between the United States and the Postal Service for purposes of subject matter jurisdiction of the Court of Claims.

This Court is unpersuaded by either *Butz Engineering* or *Coley Properties*. This Court's exhaustive review of the Postal Reorganization Act and its legislative history has satisfied this Court that Congress intended to establish an entity with a unique degree of autonomy, an entity to be treated as distinct from and separate from the United States. Accordingly, the Court declines to follow *Coley Properties* and furthermore finds 28 U.S.C. § 2516(a) completely inapplicable since that statute applies to the United States and not to the Postal Service, *cf.*, 39 U.S.C. § 409.

*Chisholm v. United States*, 516 F.Supp. 810, 880 (W.D.N.C.), *aff'd on other grounds*, 665 F.2d 482 (4th Cir. 1981) is a case that deals specifically with the liability of the Postal Service for interest on Title VII judgments. Unfortunately, however, the reasoning of *Chisholm* is somewhat difficult to discern. In *Chisholm*, the court makes a distinction between pre-judgment and post-judgment interest. With respect to post-judgment interest, the Court merely relies on *White v. Bloomberg, supra*. With respect to prejudgment interest the Court relies on the cases holding that Title VII plaintiffs may not recover interest from executive agencies and military departments, *see, e.g., Saunders v. Claytor, supra*,

and the other cases cited above. Nowhere does the court in *Chisholm* discuss the effect, if any, of 39 U.S.C. § 401(1) on the invocation of the traditional rule of sovereign immunity.[6]

■ This Court is satisfied that the "sue and be sued" clause of 39 U.S.C. § 401(1) constitutes a waiver of sovereign immunity, that none of the circumstances identified by the Supreme Court for a limitation on that waiver appear, that the clause must therefore be liberally construed, and that the Postal Service is liable for interest on Title VII judgments entered against it to the same extent as a private employer.

## II

The main contention of the Postal Service in urging a narrow construction of 39 U.S.C. § 401(1) is that the waiver of sovereign immunity is a "multidimensional concept," that a waiver of sovereign immunity for some purposes does not constitute a waiver of sovereign immunity for all purposes, that each aspect of an alleged waiver should be analyzed separately, and that a waiver of liability for interest should not be held to be included within a general waiver clause. In this regard, the Postal Service places great reliance on *National Association of Letter Carriers v. United States Postal Service*, 590 F.2d 1171 (D.C. Cir. 1978), wherein it was held that the Postal Service is not liable to a prevailing party for attorneys' fees.

This Court finds *Letter Carriers* wholly inapplicable and totally irrelevant. First, the statute which the plaintiff therein asserted as an authorization for an award of attorneys' fees was not 39 U.S.C. § 401(1),

---

**6.** The Court's attention has been drawn to the case of *I.M.A.G.E. v. Bailar*, 518 F.Supp. 800 (N.D. Cal. 1981). In that case, the district court was being asked to enjoin the Postal Service from using certain examinations in making hiring decisions. In assessing the relative hardship to the parties, the district court observed that a preliminary injunction was necessary to prevent future harm to plaintiffs not remedial by money damages, given the im-

munity of the government from interest on awards on judgments. At no point did the Court acknowledge or discuss 39 U.S.C. § 401, and it would appear that the Court merely took for granted the proposition that the Postal Service was covered by the general rule. Accordingly, the observation in *Bailar* that the Postal Service is not liable for interest on judgments is *dicta*.

but 39 U.S.C. § 1208(b).[7] Even assuming plaintiff had invoked 39 U.S.C. § 401(1), this Court would have no problem rejecting the argument that a general waiver of sovereign immunity embraced liability for attorneys' fees. The Supreme Court has held that a general waiver of sovereign immunity ought, barring contraindications, be construed as assuming liability for the "natural and appropriate incidents of legal proceedings," *Reconstruction Finance Corp. v. J.G. Menihan Corp., supra.* The Supreme Court has also held that attorneys' fees *are not,* in the American tradition, a natural and appropriate incident of legal proceedings, *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). *Letter Carriers,* even if it were premised on 39 U.S.C. § 401(1), would not stand for the proposition that a waiver of sovereign immunity is a multi-faceted concept, each facet of which requires separate analysis; it would stand for the proposition that attorneys' fees are not encompassed within a waiver of sovereign immunity because of the American tradition of each side bearing its own attorneys' fees. Congress would certainly not have anticipated an abrogation of common law on this point by a waiver of sovereign immunity.

Even if this Court were to accept the argument of the Postal Service that a waiver of sovereign immunity is not to be looked at sweepingly, but rather incrementally, the Court would have no difficulty in finding interest on judgments properly within a general waiver. As noted above, the Supreme Court has held that a waiver of sovereign immunity usually encompasses all "natural and appropriate incidents of legal proceedings," including costs, *Reconstruction Finance Corp. v. J.G. Menihan Corp., supra.* This Court is of the opinion that interest on judgments is also a "natural and appropriate incident of legal proceedings," *Standard Oil Co. v. United States, supra, Bituminous Casualty Coal Corp. v. Lynn,*

*supra.* Therefore, liability for interest on judgments is within a general waiver of sovereign immunity.

## III

As an alternative, the Postal Service argues that it ought not to be singled out from the entities made subject to Title VII by 42 U.S.C. § 2000e–16 for liability for interest. The Postal Service correctly points out that similarly situated entities ought to be treated similarly, and that every statute ought to be construed as a coherent whole. Furthermore, artificial distinctions between entities catalogued together ought not to be made.

The Postal Service thus argues that 42 U.S.C. § 2000e–16 ought to have a uniform application to all the entities listed in subsection (a)—since the courts have hitherto held that executive agencies and military departments are immune from liability for interest, the Postal Service ought likewise to be held immune.

The Court accepts the initial premise of the Postal Service, but rejects the conclusion. The courts which have held that successful Title VII plaintiffs cannot recover interest from executive agencies and military departments have done so on the basis of the common law and the silence of Title VII, *Richerson v. Jones, supra.* The unwillingness of the courts to award interest proceeds not from the statutory scheme of Title VII, but from common law. The Postal Service, however, does not enjoy the benefit of the common law tradition of sovereign immunity, Congress having waived the sovereign immunity of the Postal Service. The *sui generis* treatment of the Postal Service proceeds from the *sui generis* status of the Postal Service. The distinction made between the Postal Service and the executive agencies and military departments is not an artificial one, but one that flows from their respective organic statutes.

---

**7.** 39 U.S.C. § 1208(b) is an analogue of 29 U.S.C. § 185. The plaintiff in *Letter Carriers* argued that 29 U.S.C. § 185 had been construed to authorize an award of attorneys' fees to a prevailing party, and that an award of attorneys' fees was therefore appropriate pursuant to 39 U.S.C. § 1208(b). The Circuit Court of Appeals was dismissive of this argument.

Concluding that the Postal Service is liable for interest on judgments will in no way undermine or distort the rationale behind Title VII, but concluding that the Postal Service is not liable for interest on Title VII judgments would in fact distort the provisions of 39 U.S.C. § 401(1). To adopt the argument of the Postal Service would require this Court to find that Congress, by including the Postal Service within the ambit of Title VII, *reinstated* the sovereign immunity it had previously waived. Such a conclusion cannot be drawn from inference, and nothing in the statute or legislative history has been suggested to support said argument.

In summary, the Court finds that it is not inappropriate to hold the Postal Service liable for interest even though the executive agencies and military departments are immune. Since the difference in treatment reflects only the differences in the various entities involved, and more importantly since the imposition of liability would in no way contravene the rationale of Title VII, the argument of the Postal Service on this particular point is rejected.

IT IS THEREFORE ORDERED that the motion of defendant BOLGER to strike plaintiff's prayer for interest is DENIED.