STANDARD OIL DIVISION, AMERI-
CAN OIL COMPANY,
Plaintiff-Appellant,

v.

John STARKS, Jr., Defendant-Appellee,

and

United States Postal Service,
Employer-Appellee.

CHICAGO HOUSING AUTHORITY,
Plaintiff-Appellant,

v.

Mrs. Johnnie B. JONES,
Defendant-Appellee,

and

United States Postal Service,
Employer-Appellee.

FIRST FINANCE COMPANY,
Plaintiff-Appellant,

v.

David C. DEININGER,
Defendant-Appellee,

and

United States Postal Service,
Employer-Appellee.

Nos. 75–1608, 75–1609, 75–1690.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 20, 1975.

Decided Dec. 24, 1975.

Rehearing and Rehearing En Banc
Denied Feb. 10, 1976.

Harold L. Wagman, M. C. Elden, Chicago, Ill., for plaintiffs-appellants.

Samuel K. Skinner, U. S. Atty., Martin B. Lowery, Asst. U. S. Atty., Chicago, Ill., for appellees.

Before CLARK, Associate Judge,* CASTLE, Senior Circuit Judge, and SWYGERT, Circuit Judge.

PER CURIAM.

These appeals challenge the immunity of the United States Postal Service (USPS) to garnishment procedures to effect judgments in state courts. The Government says:

"The United States Postal Service, being an independent establishment of the executive branch and performing a function which only the federal government may perform or delegate is not subject to a garnishment proceeding."

* Associate Justice Tom C. Clark, United States Supreme Court (Ret.) is sitting by designation.

The Government cites as authority for its proposition only two cases, *Lawhorn v. Lawhorn*, 351 F.Supp. 1399 (S.D.W.Va. 1972), and *Detroit Window Cleaners Local 139 Insurance Fund v. Griffin et al.*, 345 F.Supp. 1343 (E.D.Mich.1972). The District Court here followed these cases and quashed the garnishment summons in each case. We find this error and reverse.

## I.

The trilogy of Supreme Court opinions in *Keifer & Keifer v. R. F. C.*, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939); *F. H. A. v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), and *R. F. C. v. Menihan Corp.*, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941), control the outcome in this case. In *Keifer*, the Court laid down the rule that "the government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work." *Keifer, supra*, 306 U.S. at 388, 59 S.Ct. at 517. In *F. H. A. v. Burr, supra*, first the Court announced the *Keifer* principle that waivers by Congress of governmental immunity from suit should be liberally construed in the case of federal instrumentalities. Then the Court continued that, in the absence of a contrary showing, "[I]t must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue and be sued,' that agency is not less amenable to judicial process than a private enterprise under the circumstances would be." *Id.* 309 U.S. at 245, 60 S.Ct. at 490. Finally, in *R. F. C. v. Menihan Corp., supra*, the Court applied "the principle that there is no presumption that the agent is clothed with sovereign immunity." *Id.* 312 U.S. at 85, 61 S.Ct. at 487. The Court then looked at the statute creating the R.F.C. and previous cases construing its language, and announced: "We apply the farther (sic) principle that the words 'sue and be sued' normally include the natural and appropriate incidents of legal proceedings." *Id.*

In each of these three cases, the Supreme Court determined that Congress could by the laws creating independent agencies also waive whatever claim those agencies might make to the sovereign immunity enjoyed by the United States Government. The significant turning point for this case was reached when the Congress transformed the United States Post Office into the United States Postal Service.

Indeed, in enacting the Postal Reorganization Act, Pub.L. 91–375, the Congress specifically declared its purpose to be to authorize the operation of the postal service in "a business-like way," 1970 U.S.Code Cong. & Admin.News, pp. 3649, 3660. It wished to make the delivery of the mail a self-supporting enterprise. 39 U.S.C. § 2401. To this end it removed the USPS from the political arena by placing it under a Board of Governors appointed by the President. 39 U.S.C. §§ 202–05. This Board—rather than the President—would select the Postmaster General and also hold the sole power to remove him; his Deputy would be selected by the Board and the Postmaster General and serve at their pleasure. The Act also confers on the United States District Court original but not exclusive jurisdiction "over all actions brought by or against the Postal Service" with all of the procedures of Title 28 being made applicable. 39 U.S.C. § 409(a). Additionally, the USPS is given authority, with the prior consent of the Attorney General, to employ its own attorneys. 39 U.S.C. § 409(d). Finally, the Act has a sweep-provision that, outside of certain enumerated exceptions, "no Federal Law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds . . . shall apply to the exercise of the powers of the Postal Service." 39 U.S.C. § 410.

The powers granted to the USPS are also important to our consideration of the effect of Congress' transfer of functions from the Post Office to the USPS. Not only was the USPS made "an *independent* establishment of the executive branch of the Government of the United

States," 39 U.S.C. § 201 (emphasis supplied), the USPS was also granted by the Congress wide and distinct powers separate from that Government. The most significant of those powers for the analysis of this case is the USPS power to "sue or be sued in its official name." 39 U.S.C. § 401(1). It is the extent of that grant that is the disputed issue of this case.

Beyond that significant power, however, there are still other powers that the Congress granted to the USPS which underscore the independence that the transformed postal agency was to possess. It was empowered to enter into contracts and execute instruments; to keep its own accounts; to acquire, hold, maintain, sell and lease real and personal property; to construct, lease, and maintain buildings, facilities, equipment, etc.; to accept gifts and donations of services; to settle claims by or against it. 39 U.S.C. §§ 401(3)–(9). Under the reorganization, the USPS was granted broad powers regarding employment and transportation matters. 39 U.S.C. §§ 1001 et seq. and § 5001 et seq. By the creation of a special Postal Service Fund, a revolving fund in the Treasury of the United States, and the broad grant of financing powers, the Congress put the USPS on an independent financial basis, with only transitory appropriations to be under the annual budget of the United States. The USPS was to exercise and "to have all other powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers." 39 U.S.C. § 401(10). Altogether, these powers emphasize the autonomy that the USPS was to enjoy.

## II.

■ It appears to us that Congress has not only continued the "emphatic practice" mentioned in Keifer of disallowing governmental immunity for federal agencies, but in the case of USPS has made it even less hospitable. In addition to the power to sue and be sued, Congress has assigned a superabundance of power to USPS in making it an "inde-pendent establishment," operating in a "business-like" way to make the delivery of the mail "a self-supporting enterprise." Congress knows well enough how to draw such statutes. In addition to the forty cited in Keifer, supra, 306 U.S. at 390–91, n. 3, 59 S.Ct. 516, there have been five statutes of that type enacted: 15 U.S.C. § 634(b)(1); 38 U.S.C. § 1820(a)(1); 12 U.S.C. § 181(a); 12 U.S.C. § 341; 20 U.S.C. § 1132C–2(b)(2); 35 U.S.C. § 1154. Moreover, in the Act here, the Congress specifically restricted the consent to suit in two respects only: (1) the applicability of the Federal Tort Claims Act and (2) procedural matters relating to suits against the United States. 39 U.S.C. § 409. These specific and isolated limitations indicate beyond doubt that the waiver to sue and be sued applied to all other litigation. See KSK Jewelry Co. v. Chicago Sheraton Corp., 283 F.2d 8, 11 (7th Cir. 1960); White v. Bloomberg, 501 F.2d 1379, 1386 (4th Cir. 1974); Sutherland, Statutory Construction § 47.23. Since both Burr and Menihan involved garnishments and are both prior in time of the Postal Reorganization Act, it is reasonable to assume that the Congress intended that the "sue and be sued" clause embraced garnishment proceedings against the USPS.

We also note that the widespread dissatisfaction with the doctrine of sovereign immunity has continued unabated. Byse, Proposed Reforms in Federal Nonstatutory Judicial Review: Sovereign Immunity, Indispensable Parties, Mandamus, 75 Harv.L.Rev. 1479 (1962); 3 K. C. Davis, Administrative Law Treatise, ch. 27 (1958, Supp.1965); L. Jaffe, Judicial Control of Administrative Action, 197–98, 213–31, 299 n. 123 (1965); Carrow, Sovereign Immunity in Administrative Law—a New Diagnosis, 9 J.Pub.Law 1, 22 (1960); Crampton, Non-statutory Review of Federal Administrative Action: The Need for Statutory Reform of Sovereign Immunity, Subject Matter Jurisdiction, and Parties Defendant, 68 Mich. L.Rev. 387 (1970); Currie, The Federal Courts and The American Law Institute, (Part II), 36 U.Chi.L.Rev. 268, 290 (1969);

K. C. Davis, *Administrative Law Text* § 27.07 at 497 (3d ed.1972). In the face of the "sue and be sued" provisions of the Act, no arguments have been made by any persuasive authority to support the maintenance of sovereign immunity in these garnishment proceedings.

### III

It is insisted that USPS is immune from suit because it has not been "launched into the commercial world," in the sense of the Supreme Court holding in *Burr, supra*, and because it has been assigned an exclusively governmental function. This is wrong, however, both as a matter of law as well as of fact. *Keifer, supra*, teaches us that a government agency does not acquire the government's immunity merely because it does government work. Factually USPS operations cannot be described as "exclusively" governmental. Indeed most of its work is not governmental in nature. The powers that are set out in § 401 and outlined above in Part II of this opinion are powers that are common to any business organization. The delivery of mail itself is not inherently an operation that must be government-operated and in fact is not exclusively so operated today. The United States Parcel Service is but one example of a private mail delivery system; in addition, Consumer Services Cooperation in Ohio, Private Postal System of America in Florida, and American Postal Corporation on the West Coast all are presently delivering third and fourth class mail. The Western Union has its mailograms, and there are hundreds of subcontractors working for the USPS itself.

The appellee asserted, and the District Court agreed, that to subject the Postal Service to garnishment proceedings for the possible debts of 750,000 employees would be to impose a "grave interference with U.S. Postal Service's functions." Yet there has been no "clear showing" of interference. We cannot on the mere assertions made here imply that Congress did not intend the full consequences of what it said. *F. H. A.*

*v. Burr, supra*, 309 U.S. at 249, 60 S.Ct. 488. There is no basis in law or policy for blocking these garnishment proceedings.

Reversed.