**IOWA–DES MOINES NATIONAL BANK, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 76–91–2.**

United States District Court, S. D. Iowa, C. D.

June 16, 1976.

Tobin B. Swanson, Watson & Swanson, P. C., Des Moines, Iowa, for plaintiff.

Allen L. Donielson, U. S. Atty., William D. Scherle, George H. Perry, Asst. U. S. Attys., Des Moines, Iowa, for defendant.

## ORDER

HANSON, Chief Judge.

This case involves the issue of whether the United States Postal Service is immune from properly instituted state law garnishment proceedings. On February 9, 1976, plaintiff Iowa-Des Moines National Bank caused a notice of garnishment to be served upon the Des Moines office of the Postal Service. The garnishment proceedings were based upon a judgment in the amount of $1,029.03 obtained by the bank against Ronald and Vickie Strange. Because Vickie Strange is an employee of the Postal Service, the matter was removed to this Court pursuant to 28 U.S.C. § 1441 and § 1442. *See Drs. Macht, Podore & Associates, Inc. v. Girton,* 392 F.Supp. 66, 67–68 (S.D.Ohio 1975); *Allen v. Allen,* 291 F.Supp. 312, 313 (S.D.Iowa 1968); *see also* 42 U.S.C.A. § 409(a) (1976 supp.). The matter currently before the Court is defendant's motion to quash notice of garnishment. The essence of defendant's motion is the claim that the Postal Service (the garnishee) is immune from such proceedings absent explicit congressional consent authorizing garnishments.

The United States Postal Service was established by Congress in Public Law 91–375, 84 Stat. 720, effective July 1, 1971. *See* 39 U.S.C.A. § 101 *et seq.* (1976 supp.). First among the enumerated powers of the Postal Service is the power "to sue and be sued in its official name." 39 U.S.C.A. § 401(1). Notwithstanding this expansive consent to suit, the Government maintains that garnishment proceedings are excluded from the meaning of Section 401(1). While at least six different United States District Courts have accepted the Government's view of Section 401(1) in the context of a garnishment proceedings, one United States District Court and the United States Court of Appeals for the Seventh Circuit have held to the contrary. *Compare Drs. Macht, Podore & Associates, Inc. v. Girton, supra; Nolan v. Woodruff,* 68 F.R.D. 660 (D.D.C. 1975); *Lawhorn v. Lawhorn,* 351 F.Supp.

1399 (S.D.W.Va.1972); *Detroit Window Cleaners Local 139 Ins. Fund v. Griffin,* 345 F.Supp. 1343 (E.D.Mich.1972); *Commerce Bank of Kansas City v. Fugate,* No. 20470–2 (W.D.Mo.1973); and *Bean, Phillips & Bean v. Moore,* No. 6305 (E.D.Tenn.1972) *with Standard Oil Division, American Oil Company v. Starks,* 528 F.2d 201 (7th Cir. 1975), and *Colonial Bank v. Broussard,* 403 F.Supp. 686 (E.D.La.1975). It is the Court's conclusion that the views expressed by the Seventh Circuit Court of Appeals and the District Court for the Eastern District of Louisiana correctly state the current status of the Postal Service on the question of congressional consent to garnishment proceedings against the Service. Accordingly, defendant's motion to quash must be overruled.

In *F.H.A. v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940) the United States Supreme Court considered the question of whether congressional consent that the F.H.A. could "sue and be sued" encompassed garnishment proceedings. In holding that the F.H.A. is subject to garnishment for sums due to an employee, Justice Douglas made the following comments, which are fully applicable to the instant case:

> Since consent to "sue and be sued" has been given by Congress, the problem here merely involves a determination of whether or not garnishment comes within the scope of that authorization. No question as to the power of Congress to waive the governmental immunity is present. For there can be no doubt that Congress has full power to endow the Federal Housing Administration with the government's immunity from suit or to determine the extent to which it may be subjected to the judicial process. *Federal Land Bank v. Priddy,* 295 U.S. 229 [55 S.Ct. 705, 79 L.Ed. 1408]; *Keifer & Keifer v. Reconstruction Finance Corporation,* 306 U.S. 381 [59 S.Ct. 516, 83 L.Ed. 784].
> As indicated in *Keifer & Keifer v. Reconstruction Finance Corporation, supra,* we start from the premise that such

waivers by Congress of governmental immunity in case of such federal instrumentalities should be liberally construed. This policy is in line with the current disfavor of the doctrine of governmental immunity from suit, as evidenced by the increasing tendency of Congress to waive the immunity where federal governmental corporations are concerned. *Keifer & Keifer v. Reconstruction Finance Corp., supra.* Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued", it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue or be sued", that agency is not less amenable to judicial process than a private enterprise under like circumstances would be. 309 U.S. at 244–45, 60 S.Ct. at 490 (footnote omitted).

For the defendant to escape the clear implications of *Burr,* it must be shown either (1) that the Postal Service has not been "launched . . . into the commercial world" in the same manner the F.H.A. was; (2) that garnishment is inconsistent with the statutory scheme setting up the Postal Service; or (3) that "grave interference" with Postal Service operations would occur should garnishments be allowed. Further, defendant asserts that garnishments for commercial debts are expressly precluded by the recently-enacted 42 U.S.C.A. § 659 (1976 supp.), which provides as follows:

Consent by United States to garnishment and similar proceedings for enforcement of child support and alimony obligations

Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States (including any agency or instrumentality thereof and any wholly owned Federal corporation) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.

In *Standard Oil v. Starks, supra,* the Seventh Circuit discussed whether any of the three "implied exceptions" to consent of *F.H.A. v. Burr* applied to garnishments of the Postal Service. This Court is in full agreement with the conclusion in *Standard Oil* that none of the implied exceptions of *Burr* remove garnishment proceedings from the Postal Service's consent "to sue and be sued." Congress established the Service to be an independent agency, and to engage in numerous endeavors, both "governmental" and "commercial," in an autonomous manner. 528 F.2d 201–04. The only statutory exceptions to the Service's consent to be sued appear to involve matters within the scope of the Federal Tort Claims Act and in regard to procedural rules applicable to suits against the United States. 39 U.S.C.A. § 409; *See Standard Oil, supra,* at 203; *White v. Bloomberg,* 501 F.2d 1379, 1386 (4th Cir. 1974). In light of these express limitations to the blanket consent of § 401(1), if Congress had intended garnishment proceedings to be similarly excluded it

would have said so.[1] *Cf. F.H.A. v. Burr, supra,* at 247 n. 10. The statutory scheme setting up the Postal Service simply does not justify engrafting the "implied exceptions" of *Burr* upon the Service's general consent to suit. *Standard Oil, supra; Colonial Bank v. Broussard, supra; see also White v. Bloomberg, supra,* at 1385–86.

 Remaining to be considered is the question of whether 42 U.S.C.A. § 659 (1976 supp.) bars the instant garnishment. The Government asserts that § 659 is fully applicable to the Postal Service, and that it allows garnishment for only two purposes: child support and alimony payments. Since this case involves a garnishment to collect upon a court judgment stemming from a commercial obligation, the Government asserts that § 659 bars the proceeding. The Court agrees with the defendant that § 659 allows garnishments in two contexts which are not relevant here; it is the Court's conclusion, however, that § 659 has absolutely no relevance to this particular garnishment against the Postal Service. The Government has apparently misconstrued the purposes behind the enactment of § 659.

A review of the legislative history of § 659 reveals that it was intended to *enlarge* the number of garnishment proceedings that can be brought against the United States and its agencies, not restrict them. As one United States District Court has recently stated, "the purpose and effect of section 659" was to waive the sovereign immunity of the United States. *Morrison v. Morrison,* 408 F.Supp. 315 (N.D.Tex. 1976). As stated in the legislative history of P.L. 39–647:

At the present time, the pay of Federal employees, including military personnel, is not subject to attachment for purposes of enforcing court orders, including orders for child support or alimony. The

---

1. No claim can be made that garnishment proceedings, by their very nature, were not contemplated by Congress in the general phrase "sue and be sued." As stated in *Burr,* "clearly the words 'sue and be sued' in their normal connotation embrace all civil process incident to the commencement or continuance of legal

proceedings. Garnishment and attachment commonly are part and parcel of the process, provided by statute, for the collection of debts." 309 U.S. at 245–46, 60 S.Ct. at 490.

Garnishment and attachment are authorized by Chapters 642 and 639, respectively, of the Iowa Code.

basis for this exemption is apparently a finding by the courts that the attachment procedure involves the immunity of the United States from suits to which it has not consented.

4 *United States Code Congressional and Administrative News,* p. 8157 (1974).

The state of the law prior to § 659 is reflected in the following except from *Applegate v. Applegate,* 39 F.Supp. 887 (E.D. Va.1941):

> The next point by the defendants raises the question of the right of a judgment creditor to attach or garnishee a debt due to his debtor by the United States. Whatever the form of this action, it amounts in fact to an attachment and garnishment against the United States.
>
> That such action cannot be maintained without the consent of the United States to being sued has long been established. The rule laid down by Justice McLean in *Buchanan v. Alexander,* 4 How. 20, 11 L.Ed. 857, has never been departed from. *While the Congress has seen fit to waive the immunity of the United States from suit in the case of certain money claims against it and also in case of many of the corporations created by it, it has so far never waived that immunity and permitted attachment or garnishment proceedings against the United States Treasury or its Disbursing Officers.* This cannot be done either directly, or indirectly through the appointment of a sequestrator or receiver or by contempt order against the debtor defendant. *McGrew v. McGrew,* 59 App.D.C. 230, 38 F.2d 541.
>
> This is not a question of any right of personal exemption on the part of the defendant Applegate but of the sovereign immunity of the United States from suits to which it has not consented. Id. at 889–890. (emphasis added).

As the *Applegate* court acknowledged, Congress *had* waived immunity in garnishment proceedings for some of the corporations created by it. Indeed, the F.H.A.

would have been one such entity; *Applegate* was decided one year after *Burr* expressly authorized garnishments against that agency. Since the Postal Service has already consented to "sue and be sued," the consent of the United States in § 659 is superfluous insofar as garnishments against the Service are concerned.[2]

For the above reasons, IT IS HEREBY ORDERED that defendant's motion to quash garnishment is overruled.

---

2. Moreover, Section 659 consents to the payment of certain claims directly from the United States Treasury. The claim in this case involves the assets and funds of the Postal Service. *See Burr, supra,* 309 U.S. at 250–51, 60 S.Ct. 488.