**UNITED VIRGINIA BANK/NATIONAL, a National Banking Association, Plaintiff,**

v.

**Howard E. EAVES**

**and**

**United States Postal Service, Defendants.**

**Civ. A. No. 76–388–A.**

United States District Court, E. D. Virginia, Alexandria Division.

June 23, 1976.

Richard E. Henning, Jr., Fairfax, Va., for plaintiff.

George P. Williams, Asst. U. S. Atty., Alexandria, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

Defendant, United States Postal Service [hereinafter referred to as "Postal Service"], has filed a Motion to Dismiss on the ground that the wages of Postal Service employees are not subject to garnishment. Plaintiff received a judgment in his favor against defendant Howard E. Eaves in the amount of $1,372.46 together with interest, attorney's fees and costs in the General District Court for the City of Alexandria, Virginia. Defendant Eaves is an employee of the United States Postal Service. On April 8, 1976, plaintiff filed a garnishment action against the defendants in the Alexandria General District Court in an effort to satisfy the judgment. The Postal Service properly removed this action to this Court. 28 U.S.C. § 1442(a)(1).

The only issue before the Court is whether a plaintiff may garnish the wages of an employee of the Postal Service. Several courts have considered the issue reaching conflicting results. *See Standard Oil Division, American Oil Company v. Starks*,[1] 528 F.2d 201 (7th Cir. 1975); *contra, Nolan v. Woodruff*, 68 F.R.D. 660 (D.D.C.1975); *Drs. Macht, Podore & Assoc., Inc. v. Girton*, 392 F.Supp. 66 (S.D.Ohio 1975); *Lawhorn v.*

*Lawhorn*, 351 F.Supp. 1399 (S.D.W.Va. 1972); *Detroit Window Cleaners Local 139 Insurance Fund v. Griffin*, 345 F.Supp. 1343 (E.D.Mich.1972); *Joseph Chevrolet, Inc. v. Albert Culberson*, No. C–1–76–145 (S.D. Ohio 1976); *Nalco Credit Union v. Turner*, No. 76–323 C(3) (E.D.Mo.1976); *Laclede Gas Company v. Fayne*, No. 76–424–C(4) (E.D.Mo.1976).

An analysis of the legislative history of the Postal Reorganization Act of 1970, 39 U.S.C. § 1001, *et seq.* and relevant case authorities is necessary to resolve the issue. The essence of the plaintiff's position is that the passage of the Postal Reorganization Act converted the Post Office into a commercial enterprise thereby subjecting the organization to any type of legal action, including garnishment proceedings. The Postal Service contends that the new legislation did not alter the traditional immunity status of the Postal Service which was established and performs constitutionally mandated duties.[2] U.S.Const. Art. I, § 8, Cl. 7.

Congress enacted the Postal Reorganization Act, P.L. 91–375, 39 U.S.C. § 1001, *et seq.* in order to enable the Postal Service to extend and improve upon its quality and scope. It was also Congress' intention to eliminate serious legislative, budgetary, personnel and financial handicaps preventing the introduction of modern management and business practices. *See* 1970 U.S. Code Cong. & Admin.News, pp. 3649, 3650. To accomplish these goals, Congress divorced the Post Office from the political process and created "an independent establishment of the executive branch" under the supervision of a nine (9) member Board of Governors, which body appoints the Postmaster General and they jointly select the Deputy Postmaster General. 39 U.S.C. § 202(c) & (d). Under the new legislation, the Postal Service is no longer subject to the pressure

---

1. As of June 18, 1976, the Supreme Court had not received a petition for a writ of certiorari in this case. Supreme Court rules provide that a petition for a writ of certiorari must be filed within ninety (90) days of the decision of the Circuit Court of Appeals. It appears, there-

fore, that the Seventh Circuit's decision will stand without review by the Supreme Court.

2. Section 8, Clause 7, provides: "The Congress shall have Power . . . To establish Post Offices and post Roads;"

of political patronage. Professionals and experts have been hired in an effort to eliminate the archaic business practices existing before 1970. The statutory revisions permit postal employees to organize and participate in collective bargaining agreements similar to employees of private companies. 39 U.S.C. § 1201, *et seq.* Congress authorized the Postal Service to enter into contracts and execute instruments; to keep its own accounts; to acquire, hold, maintain, sell and lease real and personal property; to construct, lease real and personal property; to accept gifts and donations of services; to settle claims by or against it. 39 U.S.C. § 401(3)–(9).

Congress adopted new measures for the financing of the Postal Service with the goal "to become self-sustaining—eliminating the postal deficit—by January 1, 1978." 1970 U.S.Code Cong. & Admin.News, pp. 3649, 3659. To accomplish this goal, the Postal Service was authorized to borrow money and issue obligations. The legislation adds the specific caveat that the publicly sold obligations:

"would not be guaranteed by the United States and would not be within the debt ceiling unless the Postal Service requests the Secretary of the Treasury to pledge the full faith and credit of the United States and the Secretary determines that it would be in the public interest to do so." 1970 U.S.Code Cong. & Admin. News, *supra,* at 3659

A new procedure for rate setting and service charges was provided for in the new legislation. The procedures were designed to insulate postal affairs from partisan political intervention. The members of the Rate Board are to be selected on the basis of their professional and technical expertise.

Finally, Congress empowered the Postal Service to "sue or be sued in its official name." 39 U.S.C. § 401(1). The scope of this power coupled with an analysis of the above delineated duties and responsibilities vested in the Postal Service by the Reorganization Act will be dispositive of the issue before the Court.

The defendant Postal Service argues that sovereign immunity precludes this suit. The initial premise before the Court is that waivers of governmental immunity from suit by Congress should be liberally construed when federal instrumentalities are involved. *Keifer & Keifer v. Reconstruction Finance Corporation,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939).

An exception to the general rule that the wages of Federal Government employees are not subject to garnishment was carved out in *Federal Housing Administration v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). The Supreme Court reasoned that the Federal Housing Administration, an agency with the power to sue and be sued, was deemed subject to garnishment. "[I]n absence of special circumstances, we assume that when Congress authorized federal instrumentalities of the type here involved to 'sue and be sued' it used those words in their usual and ordinary sense." *FHA v. Burr, supra* at 246, 60 S.Ct. at 491. The Supreme Court elaborated upon the parameters of the "sue and be sued" provision as follows:

"[W]hen Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued,' it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense." *F. H. A. v. Burr, supra* at 245, 60 S.Ct. at 490.

The threshold issue before the Court is whether the Postal Reorganization Act created a federal instrumentality which was launched into a commercial enterprise. If that proposition is answered affirmatively,

the Court must then consider whether a garnishment of a Postal Service employee is constitutionally or statutorily proscribed.

A review of the 1970 legislation, *see supra* pages 519–520, demonstrates clearly that Congress intended to establish an independent, self-sufficient Postal Service that differed both *de jure* and *de facto* from its predecessor, the United States Post Office. The legislative history only highlights these differences and underscores the Court's belief that Congress sought to create a new postal organization imbued with a new operational and methodological format. The design for fiscal solvency and the express proviso that the obligations of the Postal Service are distinct and separate stands as compelling evidence of Congressional intent to establish a new instrumentality to operate in a manner similar to an organization in the private sector. Furthermore, the legislative history detailed specifically the portions of the new legislation that was carried forward from the old enabling legislation. The Court concludes, therefore, that by virtue of the passage of the Postal Reorganization Act, Congress did establish an organization that was launched into the commercial world.[3] Empowered "to sue or be sued," the Postal Service is subject to the natural and appropriate incidents of legal proceedings including garnishment absent any other constitutional or statutory prohibition. *See Reconstruction Finance Corporation v. Menihan Corp.*, 312 U.S. 81, 85, 61 S.Ct. 485, 85 L.Ed. 595 (1941).

The Court is mindful that several District Courts have concluded that the Postal Reorganization Act did not create an agency barred from the protections of sovereign immunity. *See Nolan v. Woodruff*, 68 F.R.D. 660 (D.D.C.1974); *Drs. Macht, Podore & Assoc., Inc. v. Girton*, 392 F.Supp. 66 (S.D.Ohio 1975); *Lawhorn v. Lawhorn*, 351 F.Supp. 1399 (S.D.W.Va.1972); *Detroit Window Cleaners Local 139 Insurance Fund v. Griffin*, 345 F.Supp. 1343 (E.D.Mich.

1972). The thrust of these decisions is that the Postal Service does not operate as a commercial entity, as outlined by *Burr*, and assuming *arguendo* that the Postal Service does generally fall within the ambit of *Burr*, that the "special circumstances" exception is applicable.[4] The Supreme Court circumscribed the *Burr* holding when the following special circumstances are evident:

(1) Where the suit is not consistent with the statutory scheme;

(2) Where the suit may gravely interfere with the governmental function, or

(3) Where Congress intended, for other reasons, to have the power to sue and be sued interpreted narrowly.

309 U.S. at 245, 60 S.Ct. at 490.

It is self-evident that constitutional provisions would pre-empt any statutory enactment. The constitutional authorization for Congress to establish post offices will not be circumvented by garnishment proceedings against Postal Service employees. Pursuant to constitutional authority, Congress enacted the Postal Reorganization Act and fashioned the legislation in a manner consonant with its desire to develop an independent, self-sustaining postal system. The Court concludes that the garnishment of the wages of Postal Service employees is not proscribed by the Constitution. Furthermore, a perusal of the legislative history indicates that the garnishment proceedings are not inconsistent with the statutory scheme. The complete emphasis of the new legislation was to abandon archaic and antiquated methods and streamline the system by means of structural reorganization and adoption of efficient, modern management techniques analogous to the operation of a contemporary private business. 1970 U.S. Code Cong. & Admin.News, *supra* at 3660. The Court finds the remaining special circumstances inapposite. Permitting the garnishment of Postal Service employees' wages will not pose a grave interference with the Service's operation. Similar to the

---

**3.** For a delineation of the varied tasks and endeavors of the Postal Service, *see Standard Oil Division, American Oil Company v. Starks*, 528 F.2d 201, 204 (7th Cir. 1975).

**4.** *Cf. Drs. Macht, Podore & Associates, Inc. v. Girton*, 392 F.Supp. 66 (S.D.Ohio 1975).

obligation of private sector employers to garnish an employees' wages after an appropriate judgment, there is not any evidence that the Postal Service will be overly burdened by garnishment proceedings. Finally, the legislation is barren of any indication that Congress intended to interpret narrowly the power to sue or be sued in the instant circumstances. Both the statute and legislative history are silent about any restrictions on the Postal Service's power to sue or be sued. *See Standard Oil Division, American Oil Co. v. Starks,* 528 F.2d 201, 203 (7th Cir. 1975).

 In conclusion, the Court opines that the wages of Postal Service employees are subject to garnishment and that sovereign immunity does not bar said proceedings.

The defendant Postal Service contends that the recent passage of 42 U.S.C. § 659, authorizing garnishment of the pay of federal employees if the action is based upon non-payment of child support and alimony, establishes that only in those areas are Postal Service employees' wages subject to garnishment.[5] The legislative history includes the Postal Service within the statute's definition of "United States." *See* U. S. Senate Committee on Finance, Child Support Data and Materials, 94th Cong. 1st Sess., 139 (1975) (Russell B. Long, Chairman). The defendant Postal Service deduces from this definition that Congress would not have included the Postal Service within the 1975 child support and alimony statute if it had been subject previously to garnishment by virtue of the Postal Reorganization Act of 1970. This argument is appealing upon first blush. Under closer scrutiny, however, the argument fails. The definition of "United States" for purposes of 42 U.S.C. § 659 also includes agencies and instrumentalities of the United States. The logical extension of defendant's argument

would be that because agencies and instrumentalities are specifically denominated that, prior to the passage of the legislation, all agencies and instrumentalities were protected from suit by the guise of sovereign immunity. *Burr, supra,* and its progeny clearly refute this conclusion. Furthermore, the statutory language does not imply that this is the sole and exclusive legislation. In summary, the Court does not believe that the inclusion of the Postal Service within the statute's definition of the "United States" reflects a Congressional intent that the Postal Service was previously immune from suit.

Defendant Postal Service's motion to dismiss is DENIED.

---

**5.** 42 U.S.C. § 659 provides:

"Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States (including any agency or instrumentality thereof and any wholly owned Federal corporation) to any individu-

al, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments."