The MAY DEPARTMENT STORES COMPANY, Appellant,

v.

Monroe WILLIAMSON, Appellee.

SISTERS OF ST. MARY, Appellant,

v.

Donald A. LERCH and United States Postal Service, Appellees.

Nos. 76–1597 and 76–1713.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1977.

Decided Feb. 7, 1977.

Harold L. Wagman, Masor, Pitler, Wagman & Mandell (argued), Chicago, Ill., Gerald J. Bamberger, St. Charles, Mo., for Sisters of St. Mary's.

Charles Clayton, Clayton & Karfeld, St. Louis, Mo., for May Co. Dept. Store.

Harry R. Silver, Dept. of Justice, Civ. Div., App. Sec., Washington, D.C., for Williamson.

Rex E. Lee, Asst. Atty. Gen., Washington, D.C., Barry A. Short, U.S. Atty., St. Louis, Mo., and Leonard Schaitman and Richard A. Olderman, Attys., Dept. of Justice, Civ. Div., App. Sec., Washington, D.C., for U.S. Postal Service.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

These appeals challenge the immunity of the United States Postal Service (USPS) to garnishment procedures to effect judgments in state courts. In both cases the USPS filed a motion to quash summons to garnishee. On July 2, 1976, the district court[1] sustained the motions of USPS, thereby holding that the USPS was immune to garnishment procedures to effect judgments in state courts. We reverse.

When Congress created the USPS, it gave the Postal Service the authority to sue and be sued in its official name. 39 U.S.C. § 401(1). The words "sue and be sued" in their normal connotation embrace all civil process incident to legal proceedings, including garnishment procedures. *R.F.C. v. Menihan Corp.*, 312 U.S. 81, 85, 61 S.Ct. 485,

1. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

85 L.Ed. 595 (1941); *FHA v. Burr*, 309 U.S. 242, 245–46, 60 S.Ct. 488, 84 L.Ed. 724 (1940). We must determine whether Congress has intended to include garnishment procedures within the scope of USPS' authorization to "sue and be sued."

■ In *Keifer & Keifer v. R.F.C.*, 306 U.S. 381, 388, 59 S.Ct. 516, 83 L.Ed. 784 (1939), the Court noted that "the government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work." (citations omitted.)

In *FHA v. Burr, supra*, the Court grappled with the question of whether the Federal Housing Administration was subject to garnishment for monies due to an employee. After noting that waivers by Congress of governmental immunity for federal instrumentalities should be liberally construed, Mr. Justice Douglas stated the following:

> [W]hen Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued", it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue or be sued", that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

*FHA v. Burr, supra*, 309 U.S. at 245, 60 S.Ct. at 490 (footnote omitted).

■ In light of the principles enounced in the trilogy of Supreme Court cases cited above, we are unable to find that Congress has intended immunity of USPS to garnishment procedures.

The Postal Service argues that Congress did not intend to launch the USPS into the commercial world. Our review of the powers granted by Congress to the USPS convinces us otherwise. For example, Congress has empowered the USPS to enter into and perform contracts; to determine and keep its own system of accounts; to determine and keep the forms and contents of its contracts and other business documents; to acquire, hold, maintain, sell, lease, or otherwise dispose of personal or real property; to construct, operate, lease, and maintain buildings, facilities, and equipment; to accept gifts; to settle and compromise claims by or against it. 39 U.S.C. §§ 401(3)–(8). Furthermore, Congress specifically declared in creating the USPS that it should be conducted in a businesslike way. H.R.Rep. No. 17070, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Ad.News, pp. 3649, 3660. The conclusion that Congress has launched the USPS into the commercial world is inescapable.

Additionally, the USPS argues that an implied restriction on USPS' general authority to sue and be sued is necessary to avoid grave interference with its performance. However, as Mr. Justice Douglas aptly stated:

> [C]onsiderations of convenience, cost and efficiency which have been urged here are for Congress which, as we have said, has full authority to make such restrictions on the "sue and be sued" clause as seem to it appropriate or necessary.

*FHA v. Burr, supra*, 309 U.S. at 249, 60 S.Ct. at 492 (footnote omitted).

Finally, we note that Congress has clearly demonstrated the ability to restrict its consent to suits so as not to include garnishment when this result was intended. For example, the Commissioner of Education may "sue and be sued  *  *  * ; but no  *  *  *  garnishment  *  *  *  shall be

issued against the Commissioner or property under his control * * *." 20 U.S.C. § 1132c–2–(b)(2). Similarly, the Administrator of the Small Business Administration may "sue and be sued * * * ; but no * * * garnishment * * * shall be issued against the Administrator or his property * * *." 15 U.S.C. § 634(b)(1). Even though Congress restricted the consent to suit for the USPS in two limited ways, the Act is silent as to garnishment.[2]

Therefore, we conclude, as did the Seventh Circuit in *Standard Oil Div., American Oil Co. v. Starks*, 528 F.2d 201 (7th Cir. 1975), that there is no basis in law or policy for blocking these garnishment proceedings.

Reversed.

LAY, Circuit Judge, concurring.

I suggest there exists an alternative ground for our holding that the Postal Service can be garnished. In 1975 the Seventh Circuit held that the United States Postal Service is not immune to garnishment procedures, reversing two judgments of the United States District Court for the Northern District of Illinois. Motions for rehearing and rehearing en banc were denied on February 10, 1976. *Standard Oil Div., Am. Oil Co. v. Starks*, 528 F.2d 201 (7th Cir. 1975). The government did not petition for certiorari. I would hold that, in light of this decision, the United States Postal Service is collaterally estopped to relitigate the issue in this court.

In both cases the Postal Service asserts sovereign immunity as an affirmative defense. In this sense, the case is no different than one where a plaintiff relitigates an issue in a subsequent suit against newly named defendants. *See Blonder-Tongue Laboratories, Inc. v. Univ. Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). The Supreme Court objects to this practice stating:

Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or "a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure." *Kerotest Mfg. Co. v. C–O–Two Co.*, 342 U.S. 180, 185, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952). Although neither judges, the parties, nor the adversary system performs perfectly in all cases, the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard. 402 U.S. at 329, 91 S.Ct. at 1443.

The government had a full and fair hearing on the garnishment issue in the *Standard Oil* litigation. There are no new evidentiary facts involved here. It seems to me under these circumstances the principles of collateral estoppel should be applied to a government litigation policy which abuses the judicial process.

The government's refusal to follow the dictates of the *Standard Oil* decision has created a wave of repetitious litigation and confusion in federal district courts throughout the United States. The instant appeal is a consolidation of two cases from the United States District Court for the Eastern District of Missouri which held that the Postal Service is immune from garnishment procedures and admittedly disagreed with the Seventh Circuit. We reverse on basically the same grounds set forth by the Seventh Circuit in *Standard Oil*.

*At least* a dozen other district courts in five circuits have heard garnishment requests and entered orders or memoranda in accord with the Seventh Circuit opinion. *See, e. g., Goodman's Furniture Co. v. United States Postal Service*, No. 76–1141 (D.N.J., filed Sept. 7, 1976); *Household Indus. Loan Co. v. Harris*, No. 76–291 (W.D. Wash., filed Aug. 25, 1976); *Clark Bros. Furniture Co. v. Brockett*, No. 76–128 (E.D. Tenn., filed Aug. 24, 1976); *Iowa-Des Moines Nat'l Bank v. United States*, No.

---

2. Congress restricted the consent to suit in two respects: (1) by the applicability of the Federal Tort Claims Act and (2) procedural matters relating to suits against the United States. 39 U.S.C. § 409.

76–95–1 (S.D.Iowa, filed June 24, 1976); *United Va. Bank v. Eaves,* 416 F.Supp. 518 (E.D.Va., filed June 23, 1976); *First Nat'l Bank v. Baker,* No. C–75–408 (W.D.Tenn., filed June 18, 1976); and *Iowa-Des Moines Nat'l Bank v. United States,* 414 F.Supp. 1393 (S.D.Iowa, filed June 16, 1976). The government is appealing many of these decisions, admittedly in an attempt to obtain a favorable opinion from another circuit before seeking review by the Supreme Court.

We are not dealing with a problem where successive consideration by several circuit courts of appeals would be beneficial to the Supreme Court sitting in final review. Many important national issues involving differing factual experience, more often than not, do lend themselves to varying legal solutions. In those cases it may be best to delay finality of review by the Supreme Court so that it may achieve the greatest benefit from the experience of the lower courts. However, here we are concerned with an issue of narrow statutory construction. The question is simply put: Can the Postal Service be garnished? The government litigation strategy of forum shopping is grossly outweighed by the tremendous burden and costs placed on the federal courts by its continuing relitigation of the same issue. It seems to me the Department of Justice has a greater responsibility to the courts and to the law. This is not to say that the government, as any other litigant, should not have an opportunity to challenge settled doctrine. However, where there exists an important national question, as here, and there is an obvious means available to achieve finality of decision, the government should not avoid review simply because it believes the Supreme Court might rule against it, or because it disagrees with the decision of a lower federal court. When it pursues such

a policy it has, in my judgment, succumbed to a government of men who avow contempt for the judicial process and disregard for the law.[1]

Whatever the litigation strategy here, I am pleased to observe it has backfired, as we join the Seventh Circuit in deciding adversely to the government. Now the box score is two and zero. If the government continues to disagree with our decision, hopefully it will seek a writ of certiorari from the Supreme Court without further burdening the lower courts with the same issue.

---

1. Government policy and strategy to avoid Supreme Court review was one of the early arguments for "transfer jurisdiction" by circuit courts to a national court of appeals made by the National Commission urging the creation of a National Court of Appeals. *See* Commission on Revision of the Federal Court Appellate System, Structure and Internal Procedures: Recommendations for Change, 133–143 (1975). However, the wholesale revision of the federal appellate structure should not be necessary to accommodate an imprudent and unlawful governmental policy.