**GOODMAN'S FURNITURE COMPANY,**
Plaintiff-Appellee,

v.

**UNITED STATES POSTAL SERVICE,**
Defendant-Appellant.

No. 76-2438.

United States Court of Appeals,
Third Circuit.

Argued June 7, 1977.

Decided July 28, 1977.

As Amended Aug. 24, 1977.

Eichenbaum, Kantrowitz & Leff, Jersey City, N.J., M. Richard Scheer, of counsel, for plaintiff-appellee.

Rex E. Lee, Asst. Atty. Gen., Irving Jaffe, Acting Asst. Atty. Gen., Washington, D.C., Jonathan L. Goldstein, U.S. Atty., Newark, N.J., Richard A. Olderman, Atty., Dept. of Justice, Civil Division, Appellate Section, Washington, D.C., for defendant-appellant.

Before SEITZ, Chief Judge, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM.

For the sixth time [1] in the courts of appeal, and for no less than the nineteenth [2] time in the district courts, the government has sought to litigate the immunity of the United States Postal Service (USPS) to state garnishment proceedings. As Judge Weis discusses in his concurring opinion, circuit-shopping by the government in quest of a favorable decision should not be allowed. However, much as we may agree with the views expressed in the concurring opinions of Judge Weis in this case and Judge Lay in *May Department Stores Company v. Williamson,* 549 F.2d 1147, 1149–50 (8th Cir. 1977) (Lay, J., concurring), we nevertheless prefer to consider the issue presented on its merits, and now hold that the Postal Service is not immune to garnishment. Accordingly, we affirm the order of the district court which granted Goodman's motion for summary judgment and denied USPS's motion to dismiss on the ground of sovereign immunity.

### I.

In October 1975, plaintiff Goodman's Furniture Company obtained a judgment for $545.56 in the Hudson County District Court of New Jersey against one, Thomas Straub, who was employed by USPS. Thereafter an execution issued against Straub's wages, requiring the Postal Service to deduct a percentage of Straub's

1. *May Dept. Stores Co. v. Williamson,* 549 F.2d 1147 (8th Cir. 1977); *Standard Oil Div., American Oil Co. v. Starks,* 528 F.2d 201 (7th Cir. 1975); *First Nat'l Bank v. Baker,* No. 76–2287 (6th Cir.) (not yet decided); *Lee Shaffer v. Anderson Retirement Home,* No. 76–2170 (10th Cir.) (not yet decided); *General Electric Credit Corp. v. Smith,* No. 77–1037 (4th Cir.) (not yet decided), *consolidated on appeal with United Va. Bank/Nat'l v. United States Postal Service,* No. 77–1240 (4th Cir.).

2. *Kann Corp. v. Monroe,* 425 F.Supp. 169 (D.D.C.1977); *Iowa-Des Moines Nat'l Bank v. United States,* 414 F.Supp. 1393 (S.D.Iowa 1976); *United Va. Bank/Nat'l v. Eaves,* 416 F.Supp. 518 (E.D.Va.1976), *appeal pending* No. 77–1240 (4th Cir.); *United Missouri Bank v. Hudson* (W.D.Mo., filed Oct. 8, 1976); *Joseph Chevrolet, Inc. v. Culbertson,* No. C–1–76–145 (S.D. Ohio 1976); *Household Finance Corp. v. McGowan,* C.A. No. 76–292 M (W.D.Wash., filed Aug. 25, 1976); *Household Industrial Loan Co. v. Harris,* C.A. No. 76–291 M (W.D.Wash., filed Aug. 25, 1976); *Clark Bros. Furniture Co. v. Brochett,* C.A. No. 76–128 (E.D.Tenn., filed Aug. 24, 1976); *First Nat'l Bank v. Baker,* C.A. No. C–75–480 (W.D.Tenn., filed June 18, 1976), *appeal pending* No. 76–2287 (6th Cir.); *Nalco Credit Union v. Turner,* No. 76–323 C(3) (E.D. Mo.1976); *Laclede Gas Co. v. Fayne,* No. 76–424–C(4) (E.D.Mo.1976); *Colonial Bank v. Broussard,* 403 F.Supp. 686 (E.D.La.1975); *Drs. Macht, Podore & Associates, Inc. v. Girton,* 392 F.Supp. 66 (S.D.Ohio 1975); *Nolan v. Woodrow,* 68 F.R.D. 660 (D.D.C.1975); *Commerce Bank v. Fugate,* C.A. No. 20470–2 (W.D.Mo., filed Feb. 27, 1973); *Lawhorn v. Lawhorn,* 351 F.Supp. 1399 (S.D.W.Va.1972); *Detroit Window Cleaners Local 139 Insurance Fund v. Griffin,* 345 F.Supp. 1343 (E.D.Mich.1972); *Bean, Phillips & Bean v. Moore,* C.A. No. 6305 (E.D. Tenn., filed June 20, 1972); *Mid-Town Finance Co. v. Russell,* C.A. No. 6307 (E.D.Tenn., filed April 24, 1972).

weekly salary until the judgment was satisfied.

USPS refused to commence garnishment, claiming that as an arm of the sovereign it was immune from such process. Goodman's then filed suit in state court against the Postal Service pursuant to N.J.S. 2A:17–54 [3] which action was thereafter removed by USPS to the United States District Court for the District of New Jersey.

After removal, USPS moved to dismiss the action asserting sovereign immunity and Goodman's in turn moved for summary judgment. On August 13, 1976 in an unpublished opinion, the district court after correctly noting that this Circuit had yet to decide whether USPS was protected from garnishment proceedings by the doctrine of sovereign immunity, considered the authorities in other districts and circuits and concluded that with respect to garnishment proceedings, the Postal Service stands in no different position than a private employer. Accordingly on September 7, 1976, the district court entered its order denying USPS's motion to dismiss and granting summary judgment in favor of Goodman's. That order also provided that USPS commence garnishment of Straub's wages pursuant to the order of the Hudson County District Court.[4] USPS's appeal followed.

## II.

The district court in holding that sovereign immunity did not protect the Postal Service from state garnishment proceedings cited to the Seventh Circuit's opinion in *Standard Oil Division, American Oil Company v. Starks,* 528 F.2d 201 (7th Cir. 1975). *Standard Oil's* analysis of the issue which was before that Court and which now confronts us, started with an examination of three Supreme Court opinions: *Keifer & Keifer v. R.F.C.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939); *F.H.A. v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), and *R.F.C. v. Menihan Corp.,* 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941). The teaching distilled from these authorities, that Congress could "by the laws creating independent agencies also waive whatever claim those agencies might make to the sovereign immunity enjoyed by the United States Government," 528 F.2d at 202, was then related by the courts in *Standard Oil* to the Postal Reorganization Act [5] and to the broad powers granted under that Act to USPS. The Seventh Circuit concluded that Congress had not extended sovereign immunity to USPS and that USPS's "sue and be sued" provision [6] did "embrace garnishment proceedings against the USPS," [7] and could not "support the maintenance of sovereign immunity in . . . garnishment proceedings." [8]

*Standard Oil* did not accept USPS's arguments that: (1) USPS is immune from suit because it has not been "launched into the commercial world" and because it [USPS] has been assigned an exclusively governmental function; and (2) to subject the Postal Service to garnishment proceedings for the possible debts of thousands of employees would be to impose a "grave interference with U.S. Postal Service's functions." [9] We too reject these arguments for much the same reasons that they were rejected by the Seventh Circuit.

The Seventh Circuit's conclusion that USPS was not immune from garnishment

---

**3.** N.J.S. 2A:17–54 provides in relevant part:

Failure or refusal to make the payments required by § 2A:17–53 of this title [pertaining to property subject to execution] shall render such person . . . so failing or refusing liable to an action therefor by the judgment creditor named in the execution.

. . .

**4.** This latter provision apparently stemmed from the plaintiff's concession that it would be satisfied with an order directing the Postal Service to begin garnishing Straub's wages from

that date forward, rather than insisting upon a judgment for the entire amount demanded against the Service. (Dist.Ct.Op. at A 10).

**5.** 39 U.S.C. §§ 201 *et seq.*

**6.** 39 U.S.C. § 401(1).

**7.** 1528 F.2d at 203.

**8.** *Id.* at 204.

**9.** *Id.*

proceedings was soon followed by the Eighth Circuit in *May Department Stores Company v. Williamson, supra.* Both *Standard Oil* and *May Department Stores Company,* after careful consideration of the contentions marshalled by USPS, answered the arguments tendered and each has concluded that garnishment against USPS *is* available to judgment creditors. We can add nothing to those discussions. Here, the Postal Service has cited us to no different arguments, no different legislative history, and to no different congressional intent than the arguments, history and intent which it had previously urged upon our two sister circuits. Just as the Postal Service's contentions failed to impress those courts, so are we unimpressed by their restatement. We therefore join with the Seventh and Eighth Circuits in finding "no basis in law or policy for blocking [Goodman's] garnishment proceeding." [10] In so doing, we observe that Judge Lay's box score as reported in *May Department Stores Company v. Williamson,* 549 F.2d at 1150, and carried as "two and zero" (*Standard Oil* and *May Department Stores),* may now be updated to "three and zero."

### III.

The order of the district court, granting Goodman's motion for summary judgment and denying the Postal Service's motion to dismiss on the ground of sovereign immunity, will be affirmed.

WEIS, Circuit Judge, concurring:

I concur in the opinion on the merits, but desire to add a few comments.

The Government's litigation policies have been cited as one reason justifying the creation of a National Court of Appeals. The Commission on Revision of the Federal Court Appellate System quoted one commentator's conclusion that the Federal Government

is quite prepared to continue to litigate in other circuits a question that has been resolved in only one; even in the same circuit, the United States may be willing to relitigate an issue if minor factual distinctions can be made between the pending matter and the preceding decision. [1]

This relitigation policy or "circuit shopping" is intended to either limit the initial decision's effect or establish an intercircuit conflict which may be advanced as a reason for the grant of certiorari. In some contexts, the "percolation process"—testing a legal principle against a variety of factual backgrounds—can be of valuable assistance to the Supreme Court in resolving a troublesome issue. However, the percolation process is expensive and time consuming and, while it may be defensible in some circumstances, cannot be justified in a case such as this where the facts are simple and the legal question quite clear.

The issue here is a simple statutory interpretation which was first decided by a distinguished panel of the Court of Appeals for the Seventh Circuit in *Standard Oil Division, American Oil Company v. Starks,* 528 F.2d 201 (7th Cir. 1975). At that point, the postal authorities could have sought certiorari by the Supreme Court or asked Congress to change the statute. They did neither, but instead refused to accept the decision and continued to litigate in other federal courts. That course of action by the Government is unseemly. The practice of fomenting inconsistency among various courts of appeals by Government officials is unsettling to the course of justice. It is disrespectful toward the courts and hinders efficient judicial administration.

Before argument of the case at bar, two courts of appeals had decided adversely to the Post Office. The Government nevertheless continued to prosecute this appeal, and it became necessary to schedule the

---

**10.** *Id.*

**1.** Commission on Revision of the Federal Court Appellate System: Structure and Internal Procedures: Recommendations for Change, A Pre- liminary Report, A–93 (April, 1975), citing Carrington, United States Appeals in Civil Cases: A Field and Statistical Study, 11 Hous. L.Rev. 1101 (1974).

case for disposition. That, of course, usurped a place on the calendar and required the delay of a case which otherwise would have been scheduled. Most likely, the litigants in that appeal did not have the benefit of two "dress rehearsals" which seems to be the defendant's appraisal of the two earlier decisions.

*May Department Stores Company v. Williamson,* 549 F.2d 1147 (8th Cir. 1977), was the second of the two opinions adverse to the Post Office. Judge Lay, in his concurring opinion, would have invoked collateral estoppel against the defendant, relying upon the rationale of *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). In his view, the Government had a full and fair hearing on the garnishment issue and, with no new evidentiary facts, the "principles of collateral estoppel should be applied to a government litigation policy which abuses the judicial process." 549 F.2d at 1149.

The Postal Service argues here that collateral estoppel cannot be used against it. Even if that contention should prevail, the detrimental effect of repetitious litigation is so apparent that the Government's policy should be thoroughly and seriously reexamined. There is much to be said for a governmental policy of either accepting the first decision by a court of appeals in a statutory interpretation case like this or securing reversal by the Supreme Court or by Congress. If the matter is not sufficiently weighty to follow the latter alternatives, that should preclude further litigation on the question.